John P. Fischer, Esq.
*Founding Partner*
'Licensed in Florida
'Licensed in U.S. Virgin Islands

**FISCHERREDAVID**
T R I A L   L A W Y E R S

*Broward Office*
2888 East Oakland Park Blvd.
Fort Lauderdale, FL  33306
Telephone: (954) 860-8434
Facsimile: (954) 860-8584

Jordan Redavid, Esq.
*Founding  Partner*
'Licensed in Florida

*Miami-Dade Office*
55 SE 6 Street, Suite 205
Miami, FL  33131
Telephone: (305) 938-9939
Facsimile:  (305) 503-9686

**SHERRY HENRY**

-vs-

**MA ALTERNATIVE TRANSPORT SERVICES, INC.**

*Date of Loss: October 14, 2016*

CONFIDENTIAL SETTLEMENT DISCUSSIONS

Sardy's Group Corporation
10126 W. Flagler Street
Miami, Florida 33174

Claim No.: _____

Attn: Raul Sardina
*Sent via Email (*Sardy@Bellsouth.net*; Alixa@sardyinsurance.com; rauljr@sardyinsurance.com*)*

Sent on: June 9, 2017

## "Ladies and gentlemen of the jury...



the Defendant's entire purpose, it's core function, is to provide _safe_ and _reliable_ transportation to people in need; people who, regrettably, call on them because they already require the assistance of medical professionals but are either incapable of getting to and from those visits themselves or are without means to secure transportation of choice. Even for the modest it takes a certain level of humility to be so _dependent_ upon the assistance of others to complete essential, but nevertheless basic functions of life.

But there must be some degree of relief, of comfort when entering that Vehicle that shows up at your home. For this is no ride sharing app, no Uber or Lyft. This is MA Alternative Transport Services, Inc., a company health insurance providers _trust_ to transport their insured _safely_ and _reliably._ Passengers may worry about the doctor visit, but at least not the ride there and back. I mean, even if, worst case scenario, there was an accident along the way, putting aside who's to blame or who's at fault, at least you're in the care, custody, and control of avid professionals who, if nothing else, appreciate the importance of special needs and the vital role medical professionals play in peoples' lives...right?

Wrong. Maybe in theory but not in reality. Not in this reality, at least. The one Sherry Henry has been forced to live in ever since October 14, 2016; the date she placed her trust in the Defendant to return her to her home safely from an appointment only to arrive home worse than when she had left.

Take a moment. Take all afternoon. Take as much time as you need to fully consider the evidence presented in this case.

The Defendant _caused_ a rear-end collision, which is something the judge has already instructed you is presumptively negligent. But you didn't need that instruction. You knew it already. You knew it just as soon as you heard and saw the evidence in this case.

Paramedics on scene...oh wait, there were none. Faced with Ms. Henry's pleas for help, for the Defendant and its agent to call for emergency medical assistance...ignore her. This woman was in their care, their control. And when it mattered most, they couldn't care less. No police; no EMS; we will dump your injured body off at your house and leave you to fend for yourself. In a perverse and yet ironical sense, we will leave you alone, stranded, and without means to get to that medical attention you so desperately need. Take a bus, a public bus to the nearby Florida Hospital. Once discharged, take it home. Take a bus to the local police station to file a report; once done, take the bus home. So on and so forth.

Ms. Henry's head, her neck, her leg, and her jaw were seriously and permanently injured as a direct result of the Defendant's negligence. Her life worse now than it ever was before the Defendant came into it. And it's only going to get worse for this woman in her 50s.

This little packet over here, that's the verdict. It asks you to consider past medical expenses and those reasonably certain to be incurred in the future. It's plain as day that she's already incurred $21,316.67 and is still not finished with treatment yet. Surgery is on the horizon, folks.

3

*Past pain? Suffering? Inconvenience? Ladies and gentlemen, the simplest of daily tasks have been altered for the worse with Ms. Henry since this accident. Walking, talking, chewing, drinking, standing, you name it. But take a moment. Pause to reflect on what you heard. Doctor visit after doctor visit; treatment after treatment; Ms. Henry the person became Ms. Henry the patient. If you think this was not hard for her, that this was some easy cake walk to try and scam a windfall, you remember the testimony; the evidence you heard. Remember when her specialists needed her to take some MRIs? Remember that? So frightened to have to be cabined inside this foreign machine to be imaged that she was crippled by the thought. Claustrophobic doesn't begin to cover it. Such mental anguish that she needed to be virtually sedated so that she could even lay still for the time needed to get a clearer picture of her permanent injuries.*

*The Defendant wants you to believe the accident never happened.*
*The Defendant wants you to believe that, even if it did happen, the impact was minor.*
*The Defendant wants you to believe that Ms. Henry is faking all of this. At best, exaggerating. All these objectively verifiable injuries, somehow conjured up. All these professional doctors who swore an oath somehow persuaded to provide false opinions and come to court and lie to your face.*

*Really? Really, ladies and gentlemen?*

*Do you know what the word "verdict" means? "To speak the truth." And let yours be no exception. Retire to that room over there to deliberate, and take all the time necessary to do what's right. What's fair. But when you come back out here make sure one thing: you've allowed my client to recover no more than she is entitled to, but no less than what the facts make clear that justice requires. Let your decision speak the truth about Ms. Henry's experience.*

*A verdict holding the Defendant 100% liable to the tune of $650,000.00 USD. A number sufficient to compensate her, not just for the past, for the rest of what we all hope will be a long and fruitful life.*

——

This case is obviously not in suit—*yet*. It's not at trial—*yet*. And it's not in the hands of a jury—*yet*. If it ever is, which our client, frankly, would welcome, it'll be because you failed to seize this opportunity to do the right thing. Not only by her, but by your insured, too. Accidents happen all the time. We all know it. But not calling the cops? Ignoring her cries for help? It's cruel.

Pertinent medical treatment and billing records are enclosed. Review them carefully. They tell the story. Headaches. Neck Pain. Right wrist pain. Pain in both feet.

Disc bulges at L2-L3, L3-L4, and L4-L5, and associated radial tear at L5-S1. "Neural encroachment from L2-3 through L5-S1."

Disc bulge at C4-C5 with herniations at C5-C6 and C6-C7.

Sitting. Standing. Holding bags. All aggravates the pain. The Florida Spine and Joint Institute recommended steroid injections for relief. After thorough consulting and deliberation, she received them.

4

She even broke her tooth in the accident and will need oral surgery to fix it.

No prior auto accidents.  No prior worker's compensation claims.

MA Alternative Transport Services, Inc. carries commercial liability insurance for precisely cases like this; ones it hopes never arise but do—and has.   Situations where they are 100% at fault and cause debilitating, permanent injuries to someone.

If your insured wishes to resolve this claim without litigation, it can tender a cashier's check in the amount of $650,000.00 USD to be received by undersigned within the next fourteen (14) calendar days.

Please note, this settlement offer is intended to be an offer for a unilateral contract which can only be accepted by strict performance, not a promise by you to perform in the future, substantial performance, or partial performance.  Anything less than strict compliance shall be treated as a rejection and/or counter offer, if applicable.

Although this offer is below policy limits we nevertheless encourage you to forward this correspondence to your insured and any other insurer, including those with umbrella policies, that may have interest.

If this case is not resolved within this time frame we will promptly proceed with litigation, obtain summary judgment or directed verdict on liability, and proceed on a damages-only question. We have taken many ostensibly "worse" cases to trial and would be eager to try a case like this.  But at this time, our client is reasonable and is willing to forgo a higher recovery in favor of a good faith and speedy resolution now.

In return for strict performance with the above offer, my client will execute a general release in favor of your insurance company and your insured.  Disbursement of the funds from my trust account may be conditioned upon the delivery of that general release in favor of your insurance company and your insured.  My client will accept responsibility to satisfy all valid liens and/or medical bills against the settlement funds out of the delivery of the settlement funds.

Your settlement draft should be made payable to "Fischer Redavid PLLC – Trust Account" and be sent to my attention at my office (55 SE 6 Street, Suite 205, Miami, FL 33131).  Our law firm's Federal Tax ID/EIN is 82-1060970.

Please note that this offer is time-sensitive and can only be accepted within fourteen (14) calendar days (i.e. 5pm EST on Friday, June 23, 2017).  Please do not hesitate to contact my office with any questions.

Respectfully Submitted,

JORDAN REDAVID, ESQ.

# National Indemnity Company of the South
### Coralville, Iowa

June 12, 2017

Mr. Jordan Redavid
Fischer Redavid
2888 East Oakland Park Blvd.
Ft. Lauderdale, FL 33306

Rick Dunn6/12/2017 11:12:33 AM

    Re:    Claim Number:    74 09 422679
                Policy Number:    74 APS062192
                Insured:    MA ALTERNATIVE TRANSPORT
                Claimant:    SHERRY HENRY
                Date of Loss:    10-14-2016

Dear Mr. Redavid:

National Indemnity Company of the South (the "Company") is investigating the above-referenced matter under Business Auto policy number 74 APS 062192, with an effective policy period of January 5, 2016 to January 5, 2017 (the "Policy"). The policy was issued to MA Alternative Transport Service, Inc. The Company has assigned claim number 74-09-422679; please refer to this claim number on all correspondence.

The Company is in receipt of your letter, dated June 9, 2017, demanding $650,000 to resolve the bodily injury claim of your client, Sherry Henry. After careful review, the Company has determined it is unable to respond to your demand as it lacks necessary information and documentation to fully evaluate your client's claim.

Before we can evaluate your client's claim, we need to confirm coverage for this loss on the Policy. We are investigating this matter to confirm the loss may be covered on the Policy.

After making a determination as to whether the Policy applies to the loss, we need to review all of the relevant medical records. In this regard, there is a reference in the medical records you provided that Ms. Henry previously underwent an MRI of her spine in 2012. Accordingly, we will require your client's medical records for the five (5) years immediately preceding the date of loss. Please provide us with those records or provide us with necessary medical authorizations so we can obtain those records directly.

Our research indicates Ms. Henry was involved in another incident/accident on October 28, 2013 in which she may have sustained personal injury. Please provide us with information about that accident, as well as any other accidents, so we may evaluate the impact of the current claim on her medical condition.

Claim Operations ● P O Box 31361 ● Omaha, Nebraska 68131-0361 ● Telephone (402) 916-3800 ● Facsimile: (402) 916-3031
E-mail: reports@nationalindemnity.com

*A member of the Berkshire Hathaway group of insurance companies*



EXHIBIT
B

**National Indemnity Company of the South**
June 12, 2017
Page 2 of 2

Finally, please let us know whether Ms. Henry filed a no-fault claim with any insurance company, including this one, for her claimed injuries arising out of this accident. If so, please provide us with a log of any payments made by such carrier for her medical bills.

After we have obtained the necessary information and documentation, we will be better able to fully evaluate your client's claim and respond to your demand.

Please call me if you have any questions regarding this Claim.

Sincerely,

Richard Dunn
Claim Operations

Cc:

MA Alternative Transport Service, Inc.
8054 Excalibur Court
Orlando, FL 32822

# National Indemnity Company of the South
## Coralville, Iowa

June 16, 2017

MA ALTERNATIVE TRANSPORT
SERVICE INC
8054 EXCALIBUR COURT
ORLANDO, FL 32822

| | | |
|---|---|---|
| Re: | Claim Number: | 74 09 422679 |
| | Policy Number: | 74 APS062192 |
| | Insured: | MA ALTERNATIVE TRANSPORT |
| | Claimant: | SHERRY HENRY |
| | Date of Loss: | 10-14-2016 |
| | Driver: | UNKNOWN |

Dear Policyholder:

This letter acknowledges receipt of the above-referenced Claim. This Claim has been assigned to an independent adjuster for investigation and we ask that you fully cooperate with the adjuster so we may promptly resolve the Claim. The adjuster is Curley & Associates, Inc., and the telephone number is 407-647-8585. The adjuster may contact you by telephone or mail to obtain additional information.

If you receive or are served with any legal papers relating to this Claim, advise Richard Dunn immediately by calling the number below, and send the papers to us by fax to 402-916-3031 or by email to reports@nationalindemnity.com. If you do not have access to fax or email, send them by first-class mail. Please include the Claim Number in all future communications regarding this matter.

Please call Richard Dunn at 402-916-3576 if you have any questions regarding this Claim.

> *It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits.*

Copies to:
CRC INSURANCE SERVICES, INC.
ALTAMONTE SPRINGS, FL

Curley & Associates, Inc.
611 Wymore Rd, Suite 102
Winter Park, FL 32789

Claim Operations • P O Box 31361 • Omaha, Nebraska 68131-0361 • Telephone (402) 916-3800 • Facsimile: (402) 916-3031
E-mail: reports@nationalindemnity.com

*A member of the Berkshire Hathaway group of insurance companies*



Filing # 64382244 E-Filed 11/18/2017 11:21:08 PM

SHERRY HENRY, an individual,

      Plaintiff

v.

MA ALTERNATIVE TRANSPORT
SERVICES, INC., a Florida Corporation, and
JOHN DOE, an individual,

      Defendants.

_____/

IN THE CIRCUIT COURT OF THE 9th
JUDICIAL CIRCUIT IN AND FOR
ORANGE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.

## COMPLAINT

COMES NOW, the Plaintiff, SHERRY HENRY, by and through undersigned counsel, and hereby sues the Defendants, MA ALTERNATIVE TRANSPORT SERVICES, INC. and JOHN DOE, and states as follows:

### GENERAL ALLEGATIONS

1.      This is an action for damages in excess of $15,000.00.

2.      Venue is proper in Orange County, Florida because this action arises out of a motor vehicle accident that occurred in Orange County, Florida.

3.      Defendant, JOHN DOE (hereinafter referred to as "DOE"), based on information and belief, was a resident of Orange County, FL at all times material and is *sui juris*.

4.      Defendant, MA ALTERNATIVE TRANSPORT SERVICES, INC. (hereinafter referred to as "MAATS"), is a Florida corporation, licensed to do business in the State of Florida, with its principal place of business in Orange County, Florida.

5.      Plaintiff, SHERRY HENRY (hereinafter referred to as "HENRY"), is at all times material a resident of Broward County, Florida and is *sui juris*.

6.      On or about October 14, 2016, Plaintiff, HENRY, was a backseat passenger in a motor vehicle driven by DOE near the intersection of West Colonial Drive and North Hughey



Avenue in Orlando, Orange County, Florida.

7.      On or about October 14, 2016, Defendant DOE, while operating the motor vehicle in question, caused a rear-end collision with another vehicle in front of it, the make/model and driver of which is presently unknown.

8.      Immediately following said collision, HENRY asked DOE to call the police and paramedics, but DOE did not do so. Instead, DOE gave HENRY a business card with the following writings on it: Alternative Transport Services, TO SCHEDULE A TRANSPORT CALL 407-704-2715, EMAIL: MAWHEELCHAIR@gmail.com, Fax:407-985-1426, PROVIDING SERVICES IN: ORANGE, OSCEOLA, SEMINOLE COUNTIES" and drove HENRY home.

## COUNT I - NEGLIGENCE AS TO DEFENDANT, JOHN DOE

9.      Plaintiff re-adopts and re-alleges paragraphs one (1) through eight (8) as if fully set forth herein.

10.     At all times material, DOE owed a duty to the public and to the Plaintiff, as his passenger, to exercise reasonable care and diligence in the operation and maintenance of his motor vehicle.

11.     DOE breached that duty by failing to operate the vehicle in a safe manner, thereby causing or permitting it to collide with the unknown vehicle in front of it.

12.     As a direct and proximate result of DOE's breach and the resulting collision, Plaintiff was seriously injured. She suffered bodily injuries, physical impairment, handicap, aggravation of a previously existing condition, physical, mental and emotional pain and suffering, disability and disfigurement, embarrassment and humiliation. She has incurred medical and related bills and expenses and her ability to enjoy life has been diminished.

13.     Plaintiff's injuries are permanent and continuing in nature and she will continue to incur them in the future.

WHEREFORE, the Plaintiff demands judgment in excess of fifteen thousand dollars ($15,000.00) for damages against the Defendant JOHN DOE, plus costs and interests on that portion of the claim constituting liquidated damages and further demands trial by jury.

<u>**COUNT II -VICARIOUS LIABILITY AS TO DEFENDANT,**</u>
<u>**MA ALTERNATIVE TRANSPORT SERVICES, INC.**</u>

14.     Plaintiff re-adopts and re-alleges paragraphs one (1) through eight (8) as if fully set forth herein.

15.     At all times material, Defendant MAATS, was the owner of the motor vehicle which was being operated by DOE, or, if the motor vehicle was actually owned by DOE, it was one that was hired or otherwise requested by MAATS for operation of its business.

16.     At all times material, the Defendant MAATS, authorized, permitted, and consented to allow said motor vehicle to be operated by Defendant, DOE.

17.     The Defendant DOE, as described in Count I of this complaint, was negligent in his operation of said motor vehicle causing personal injury to the Plaintiff.

18.     The Defendant, MAATS, at all times material, was the employer and/or principal of DOE, and is vicariously liable under the Doctrine of *Respondeat Superior* and/or Actual Agency, and/or apparent Agency and/or inherent Agency for the negligence of its employee and/or agent, DOE.

19.     As a direct result of Defendant DOE's negligence, Plaintiff HENRY was seriously injured.  She suffered bodily injuries, physical impairment, handicap, aggravation of a previously existing condition, physical, mental and emotional pain and suffering, disability and disfigurement,

embarrassment and humiliation.  She has incurred medical and related bills and expenses and her ability to enjoy life has been diminished.

20.     Plaintiff's injuries are permanent and continuing in nature and she will continue to incur them in the future.

WHEREFORE, the Plaintiff demands judgment in excess of fifteen thousand dollars ($15,000.00) for damages against the Defendant MA ALTERNATIVE TRANSPORT SERVICES, INC., plus costs and interests on that portion of the claim constituting liquidated damages and further demands trial by jury.

## COUNT III - DANGEROUS INSTRUMENTALITY DOCTRINE

21.     Plaintiff re-adopts and re-alleges paragraphs one (1) through eight (8) and fifteen (15) and sixteen (16) as if fully set forth herein.

22.     At all times material, Defendant MAATS permitted, authorized, and/or requested DOE to operate his or its vehicle to retrieve HENRY as a passenger at a determined location and bring home in Orange County, Florida.

23.     At all times material, MAATS was vicariously responsible for the negligence of DOE in the operation of his or its vehicle based upon Florida's *Dangerous Instrumentality Doctrine.*

24.     At all times material, MAATS owed a duty to the public and to the Plaintiff to exercise reasonable care and diligence in the operation and maintenance of any of its motor vehicles or those owned by other entities or people but hired, retained, or used in the operation of its business.

25.     DOE, acting with the permission of MAATS, breached that duty by failing to operate the motor vehicle in question in a safe manner, thereby causing or permitting it to collide with another vehicle.

26.     As a direct and proximate result DOE's negligence, Plaintiff HENRY was seriously injured.  She suffered bodily injuries, physical impairment, handicap, aggravation of a previously existing condition, physical, mental and emotional pain and suffering, disability and disfigurement, embarrassment and humiliation.  She has incurred medical and related bills and expenses and her ability to enjoy life has been diminished.

27.     Plaintiff's injuries are permanent and continuing in nature and she will continue to incur them in the future.

WHEREFORE, the Plaintiff demands judgment in excess of fifteen thousand dollars ($15,000.00) for damages against the Defendant, MA ALTERNATIVE TRANSPORT SERVICES, INC., plus costs and interests on that portion of the claim constituting liquidated damages and further demands trial by jury.

DATED this 18th day of November, 2017.

FISCHER REDAVID PLLC
55 SE 6 Street, Suite 205
Miami, FL  33306
Telephone: (305) 938-9939
Facsimile: (305) 503-9686
Service@FRTrialLawyers.com (Service Only)
Litigation@FRTrialLawyers.com (Correspondence)

By:    /s/ Jordan Redavid, Esq.
       JORDAN REDAVID, ESQ.
       Florida Bar No. 109227
       *Attorneys for Plaintiff*

CERTIFIED POLICY

To the best of my knowledge, the following is a true and accurate copy of

Policy Number  74APS062192                    as of                    09/ 06/ 2018  .

**Becky Hendrix**
**9/6/2018**

B. Hendrix, Underwriting Services Administrator



CERTIFIED COPY (IES) – POLICY 74APS062192

NAMED INSURED MA ALTERNATIVE TRANSPORT SERVICE INC

SEND TO RACHEL LA HOOD

CANCELLATION YES X NO

TYPED BY_____BJETZEL 9/6/2018_____

DATE REQUESTED 9/6/18

CLAIMS # 00-42-2679

M5712, M5364, M5698 ATTACHED
NOT LISTED ON FORMS LIST.

THIS IS A RUSH

Endorsement # 2

M-2904 (11/80)

## GENERAL CHANGE ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement changes the policy on the inception date of the policy or on the date shown below.
It is agreed that the policy is changed as follows:

**In consideration of an additional premium shown below,**
**Hired Auto Liability and Non-Owned Liability coverage  have been modified on the policy.**

**Liability Coverage - Rating Basis, Cost of Hire**

| Old | | | | New | | | | |
|---|---|---|---|---|---|---|---|---|
| Cost of Hire | Rate Basis | Rate* | Est. Prem | Cost of Hire | Rate Basis | Rate* | Est. Prem | Pro-Rated AP/RP |
| 5,000 | 500 | 97.240 | 972 | 300,000 | 200 | 48.620 | 72,930 | 51,666 |
| | | | (MP) | | | | (MP) | |

**\* Per each Rate Basis cost of hire**

Additional Premium  $ 51,666

Pro-Rate Factor:   0.718                                        Return Premium   $ _____

All other terms, conditions and agreements remain unchanged.

| Company Name | Policy Number |
|---|---|
| **National Indemnity Company of the South** | **74APS062192** |
| | Endorsement Effective |
| | **04/18/2016 11:48 AM** |
| Named Insured | Countersigned at |
| **MA ALTERNATIVE TRANSPORT SERVICE, INC.** | by |

(Authorized Representative)

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

M-2904 (11/80)

04/27/2016 12:14 4872718C-2FB4-4FB4-BFB9-6B7767026E97

Endorsement # 1

M-2904 (11/80)

## GENERAL CHANGE ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement changes the policy on the inception date of the policy or on the date shown below.
It is agreed that the policy is changed as follows:

In consideration of a return premium shown below, the policy CEASES to cover the following vehicles.

| Add Del | Veh # | Year | Make | Model | VIN | Use | Rad | Gar Terr | Gar City, State | GVW/ Seat |
|---------|-------|------|------|-------|-----|-----|-----|----------|-----------------|-----------|
| D | 4 | 2007 | FORD | ECONOLINE | 1FTNS24W07DB24878 | C | 100 | 5 | ORLANDO, FL | 3 |

| | New Annual Premium | | | | | Prorated Premium | | | | |
|-----|------|----|-----|---------|-----|------|----|-----|---------|--------|
| Veh # | Liab | UM | UIM | Med Pay | PIP | Liab | UM | UIM | Med Pay | PIP |
| 4 | | | | | | -9,004 | | | | -1,309 |
| | | | | | Subtotal | -9,004 | | | | -1,309 |

Pro-Rate Factor:  0.926

Additional Premium  $_____

Return Premium  $   10,668   _____

All other terms, conditions and agreements remain unchanged.

| Company Name | Policy Number |
|---|---|
| **National Indemnity Company of the South** | **74APS062192** |
| | Endorsement Effective |
| | **02/01/2016  5:42 PM** |
| Named Insured | Countersigned at |
| **MA ALTERNATIVE TRANSPORT SERVICE, INC.** | by |
| | (Authorized Representative) |

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement # 1

**GENERAL CHANGE ENDORSEMENT**

M-2904 (11/80)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement changes the policy on the inception date of the policy or on the date shown below.
It is agreed that the policy is changed as follows:

In consideration of a return premium shown below, the policy CEASES to cover the following vehicles.

| Add Del | Veh # | Year | Make | Model | VIN | Use | Rad | Gar Ter | Gar City, State | GVW/ Seat Cap | Physical Damage Limit Stated Amt or ACV | S C | Spec Causes of Loss/ Comp Deduct | Coll Deduct |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| D | 4 | 2007 | FORD | ECONOLINE | 1FTNS24W07DB24878 | C | 100 | 5 | ORLANDO, FL | 3 | | | | |

| Veh # | Annual Premium | | | | | | Prorated Premium | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Add'l Insd | In-Tow | Cargo | Other | Physical Damage Spec/ Comp | Coll | Add'l Insd | In-Tow | Cargo | Other | Physical Damage Spec/ Comp | Coll |
| 4 | | | | | | | | | | | | -356 |
| **Subtotal** | | | | | | | | | | | | -366 |

Pro-Rate Factor: 0.926

Additional Premium $_____

Return Premium $ <u>See Page 1</u>

All other terms, conditions and agreements remain unchanged.

| Company Name | Policy Number |
|---|---|
| **National Indemnity Company of the South** | **74APS062192** |
| | Endorsement Effective |
| | **02/01/2016 5:42 PM** |
| Named Insured | Countersigned at |
| **MA ALTERNATIVE TRANSPORT SERVICE, INC.** | by |

(Authorized Representative)

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

M-2904 (11/80)

02/10/2016 17:56 5EF16618-80DF-42B6-A47E-F6FFDF694ED8

**National Indemnity Company of the South**

A STOCK COMPANY

# COMMERCIAL POLICY

Report  **ALL** Accidents To:

# 1-800-356-5750

**24 Hour**          **Toll Free**

**IMPORTANT NOTICE
TO AUTOMOBILE POLICYHOLDERS**

If any new or replacement drivers are hired during the term of this policy, notify the company immediately. Failure to do so may result in termination of your policy.

---

THESE POLICY PROVISIONS WITH THE DECLARATIONS PAGE, COVERAGE FORM AND ENDORSEMENTS, IF ANY, COMPLETE THIS POLICY. THIS POLICY IS A LEGAL CONTRACT BETWEEN THE POLICY OWNER AND THE COMPANY.

**READ YOUR POLICY CAREFULLY**

---

01/20/2016 09:03 261AF4E8-15DC-4821-B8CE-BAF5380D2079

## COMMON POLICY CONDITIONS

**All Coverages included in this policy are subject to the following conditions:**

A. **CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 10 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date at 12:01 a.m. unless another time is stated on the cancellation notice.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

B. **CHANGES**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

C. **EXAMINATION OF YOUR BOOKS AND RECORDS**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

D. **INSPECTIONS AND SURVEYS**

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the condition we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

E. **PREMIUMS**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

F. **TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

### (Broad Form)

1. The insurance does not apply:

    A. Under any Liability Coverage, to "bodily injury" or "property damage":

    (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

    (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom.

    (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

    (3) The "bodily injury" or "property damage" arises out of the furnishings by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

    "Hazardous properties" include radioactive, toxic or explosive properties;

    "Nuclear material" means "source material," "Special nuclear material" or "by-product material";

    "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

    "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

    "Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

    "Nuclear facility" means:

    (a) Any "nuclear reactor";

    (b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste";

    (c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

    and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

    "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

    "Property damage" includes all forms of radioactive contamination of property.

M-5712 (07/2012)

# NOTICE OF CHANGE IN POLICY TERMS

**INSURED:**     **MA ALTERNATIVE TRANSPORT SERVICE, INC.**

**COMPANY:**     **National Indemnity Company of the South**

| | | | | |
|---|---|---|---|---|
| **RENEWAL POLICY #:** | **74 APS 062192** | **POLICY TERM:** | **01/05/2016** to | **01/05/2017** |
| **EXPIRING POLICY #:** | **74 APS 053738** | **POLICY TERM:** | **01/05/2015** to | **01/05/2016** |

This insurance policy, which is a renewal of the expiring policy listed above, has changes in coverage initiated by the Company. The changes in coverage are listed below. **TO UNDERSTAND YOUR POLICY AND THESE CHANGES, PLEASE READ YOUR POLICY CAREFULLY.** If you have any questions, please contact your insurance agent.

**RENEWAL POLICY CHANGES:**

| 74APS053738 |
|---|
| RENEWAL OF NUMBER |

**NATIONAL INDEMNITY COMPANY
OF THE SOUTH**
JACKSONVILLE, FLORIDA
BUSINESS AUTO COVERAGE DECLARATIONS

☒ The Declarations include a second part

**74 APS 062192**
ITEM ONE NAMED INSURED & ADDRESS

Producer

MA ALTERNATIVE TRANSPORT SERVICE, INC.
8054 EXCALIBUR COURT
ORLANDO, FL 32822

Sardy's Group Corp
10126 W. Flagler Street
Miami, FL 33174

FORM OF NAMED INSURED'S BUSINESS:   **Corporation**

NAMED INSURED'S BUSINESS:   **WHEELCHAIR TRANSPORT**

POLICY PERIOD: Policy covers FROM     **01/05/2016 12:01 AM**     TO     **01/05/2017**     12:01 A.M. Standard Time at the Named Insured's Address stated above.

ITEM TWO — SCHEDULE OF COVERAGES AND COVERED AUTOS

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO Section of the Business Auto Coverage Form next to the name of the coverage.

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from the COVERED AUTOS Section of the Business Auto Coverage Form shows which autos are covered autos) | LIMIT OF INSURANCE THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | | PREMIUM |
|---|---|---|---|---|
| LIABILITY | 2, 7, 8, 9 | $              1,000,000 CSL | | $   38,896 |
| PERSONAL INJURY PROTECTION (P.I.P.) (or equivalent No-fault coverage) | 2, 7 | SEPARATELY STATED IN EACH P.I.P. ENDORSEMENT MINUS $                    Deductible | | $   5,652 |
| ADDED P.I.P. (or equivalent added No-fault cov.) | | SEPARATELY STATED IN EACH ADDED P.I.P. ENDORSEMENT | | $ |
| PROPERTY PROTECTION INSURANCE (P.P.I.) (Michigan only) | | SEPARATELY STATED IN THE P.P.I. ENDORSEMENT MINUS $                    Deductible FOR EACH ACCIDENT | | $ |
| AUTO MEDICAL PAYMENTS | | $ | | $ |
| UNINSURED MOTORISTS | | $ | | $ |
| UNDERINSURED MOTORISTS (When not included in Uninsured Motorists Coverage) | | $ | | $ |
| **PHYSICAL DAMAGE INSURANCE** | | | | |
| COMPREHENSIVE COVERAGE | 7 | ACTUAL CASH VALUE OR COST OF REPAIR OR REPLACEMENT WHICHEVER IS LESS MINUS | $ **See M 3912b (08/2001)**     Deductible FOR EACH COVERED AUTO | $   INCL |
| SPECIFIED CAUSES OF LOSS | | | $              Deductible FOR EACH COVERED AUTO | $ |
| COLLISION COVERAGE | 7 | | $ **See M 3912b (08/2001)**     Deductible FOR EACH COVERED AUTO | $   1,536 |
| TOWING AND LABOR (Not Available in California) | | | $              Deductible FOR EACH COVERED AUTO | $ |
| FORMS AND ENDORSEMENTS CONTAINED IN THIS POLICY AT ITS INCEPTION     **See M4572 (12/1994)** | | PREMIUM FOR ENDORSEMENTS | | $   1,240 |
| | | ESTIMATED TOTAL PREMIUM | | $   47,324 |

ENTER SYMBOL 10 DESCRIPTION HERE:

**Only those autos described in Item Three of the Declarations with Liability premium shown.**

POLICY SUBJECT TO A FULLY EARNED POLICYWRITING MINIMUM PREMIUM OF $          **0**          IF CANCELLED BY THE INSURED.

ITEM THREE — SCHEDULE OF COVERED AUTOS     **AS ATTACHED**

Countersigned at     CRC Insurance Services, Inc.
**Altamonte Springs, FL**

By _____

In Witness whereof, we have caused this policy to be executed and attested.

AUTHORIZED SIGNATURE

_____
Secretary

_____
President

NIS-4489c (07/2006)

01/20/2016 09:03 261AF4E8-15DC-4821-B8CE-BAF5380D2079

## SCHEDULE OF FORMS AND ENDORSEMENTS AT POLICY INCEPTION

POLICY #          **74 APS 062192**

INSURED          **MA ALTERNATIVE TRANSPORT SERVICE, INC.**

EFFECTIVE        **01/05/2016 12:01 AM**

| | | |
|---|---|---|
| M 4600a | 04/2003 | Commercial Policy Jacket |
| NIS 4489c | 07/2006 | Business Auto Coverage Declarations |
| M 4572 | 12/1994 | Schedule of Forms and Endorsements at Policy Inception |
| M 4959a | 03/2002 | Schedule of Covered Autos |
| M 3778b | 03/2006 | Business Auto Coverage Declarations - (Continued) |
| CA 0001 | 03/2006 | Business Auto Coverage Form |
| M 3912b | 08/2001 | Stated Amount Insurance |
| CA 2210 | 01/2013 | Florida Personal Injury Protection |
| M 5056 | 08/2001 | Elimination of Limited Worldwide Coverage for Hired Autos |
| CA 0128 | 03/2009 | Florida Changes |
| M 4009a | 12/1998 | Loss Control Program |
| M 5535 | 10/2010 | Policyholders Notice - Florida |
| CA 2018 | 12/1993 | Professional Services Not Covered |
| CA 2402 | 12/1993 | Public Transportation Autos |
| M 5381 | 01/2013 | Florida Changes - Cancellation and Nonrenewal |
| M 5748 | 01/2013 | Embargo and Sanction Notice |
| M 4048a | 01/2007 | Hired Autos Endorsement |
| M 3795 | 03/1987 | Punitive Damage Exclusion Duty to Defend Amendment |
| M 4803 | 02/1998 | Abuse or Molestation Exclusion |

.

Form Version 041001

01/20/2016 09:03 261AF4E8-15DC-4821-B8CE-BAF5380D2079

M-4959a (03/2002)

# SCHEDULE OF COVERED AUTOS

POLICY NUMBER:   **74 APS 062192**

EFFECTIVE DATE:   **01/05/2016 12:01 AM**

NAMED INSURED :   **MA ALTERNATIVE TRANSPORT SERVICE, INC.**

| Veh # | Year / Make / Model / VIN | Use (C,S or R) / Radius / Garaging Territory / Garaging City, State | GVW or Seating Capacity | Liab | UM/UIM | No-Fault | Med Pay | Addl Insd | In-Tow | Other | Limit Stated Amount or ACV | S | C | Spec Causes Comprehensive / Premium / Deduct | Collision Premium / Deduct |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 2007 FORD ECONOLINE 1FTNS24W17DB24890 | Commercial 100 Miles Territory 6 ORLANDO, FL | 3 Seats | 9,724 | | 1,413 | | | | | 8,000 | | C | Incl 500 Ded | 384 500 Ded |
| 2 | 2007 FORD ECONOLINE 1FTNS24W57DB24868 | Commercial 100 Miles Territory 6 ORLANDO, FL | 3 Seats | 9,724 | | 1,413 | | | | | 8,000 | | C | Incl 500 Ded | 384 500 Ded |
| 3 | 2006 FORD ECONOLINE 1FTNS24W26HB20273 | Commercial 100 Miles Territory 5 ORLANDO, FL | 3 Seats | 9,724 | | 1,413 | | | | | 7,000 | | C | Incl 500 Ded | 384 500 Ded |
| 4 | 2007 FORD ECONOLINE 1FTNS24W07DB24878 | Commercial 100 Miles Territory 5 ORLANDO, FL | 3 Seats | 9,724 | | 1,413 | | | | | 9,000 | | C | Incl 500 Ded | 384 500 Ded |

Premium for Endorsements

M-3778b (03/2006)

PART 2

# BUSINESS AUTO COVERAGE DECLARATIONS - (Continued)

POLICY NUMBER:   **74 APS 062192**

## ITEM FOUR - SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS

| LIABILITY COVERAGE - RATING BASIS, COST OF HIRE | | | | |
|---|---|---|---|---|
| State | Estimated Cost of Hire for Each State | Rate | Factor, if liability coverage is primary | Premium |
| FL | $5,000 | 97.24 per $500 Cost of Hire | | $ 972 MP |
| | | | | $ |
| | | | | $ |
| | | | | $ |
| | | | | $ |
| | | | TOTAL PREMIUM | $ 972 MP |

"Cost of hire" means the total amount you incur for the hire of "autos" you do not own (not including "autos" you borrow or rent from your employees or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

| PHYSICAL DAMAGE COVERAGE | | | | | |
|---|---|---|---|---|---|
| Coverages | LIMIT OF INSURANCE ,THE MOST WE WILL PAY, DEDUCTIBLE | | Rate | Minimum Premium | Premium |
| Comprehensive | Actual Cash Value, Cost of Repairs | $ ___ WHICHEVER IS LESS, MINUS $ ___ DEDUCTIBLE for EACH COVERED "AUTO" | | | |
| Specified Causes of Loss | | $ ___ WHICHEVER IS LESS, MINUS $ ___ DEDUCTIBLE for EACH COVERED "AUTO" | | | |
| Collision | | $ ___ WHICHEVER IS LESS, MINUS $ ___ DEDUCTIBLE for EACH COVERED "AUTO" | | | |
| | | | TOTAL PREMIUM | | $ |

PHYSICAL DAMAGE COVERAGE for covered autos you hire or borrow is excess unless indicated below by ☒".

    ☐ If this box is checked, PHYSICAL DAMAGE COVERAGE applies on a direct primary basis and for purposes of the condition entitled OTHER INSURANCE, any covered "auto" "you" hire or borrow is deemed to be a covered "auto" "you" own.

## ITEM FIVE - SCHEDULE FOR NON-OWNERSHIP LIABILITY

| Named Insured's Business | Rating Basis | Number | Premium |
|---|---|---|---|
| Other than a Social Service Agency | Number of Employees | 3 | $ 268 MP |
| | Number of Partners | | $ |
| Social Service Agency | Number of Employees | | $ |
| | Number of Volunteers | | $ |
| | | Non-Owned UM Premium | $ |
| | | TOTAL PREMIUM | $ 268 MP |

01/20/2016 09:04 261AF4E8-15DC-4821-B8CE-BAF5380D2079

Includes copyrighted material of ISO, with its permission. Copyright, ISO, 1985

M-3778b (03/2006)

**ITEM SIX - SCHEDULE FOR GROSS RECEIPTS OR MILEAGE BASIS - LIABILITY INSURANCE - PUBLIC AUTO OR LEASING RENTAL CONCERNS**

| Estimated Yearly ☐ "Gross Receipts" ☐ "Mileage" | RATES | | | | PREMIUMS | | | |
| | ☐ Per $100 of "Gross Receipts" ☐ Per Mile | | | | LIABILITY COVERAGE | UM/UIM | PERSONAL INJURY PROTECTION | AUTO MEDICAL PAYMENTS |
| | LIABILITY COVERAGE | UM/UIM | PERSONAL INJURY PROTECTION | AUTO MEDICAL PAYMENTS | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | TOTAL PREMIUMS | | | | |
| | | | | ANNUAL MINIMUM PREMIUMS | | | | |
| | | | | MONTHLY MINIMUM PREMIUMS | | | | |

When used as a premium basis:

**FOR PUBLIC AUTOS**

"Gross Receipts" means the total amount to which "you" are entitled for transporting passengers, mail or merchandise during the policy period regardless of whether "you" or any other carrier originate the transportation. Gross Receipts does not include:

    A. Amounts "you" pay to railroads, steamship lines, airlines and other motor carriers operating under their own ICC or PUC permits.

    B. Advertising Revenue.

    C. C.O.D. collections for cost of mail or merchandise including collection fees.

"Mileage" means the total live and dead mileage of all revenue producing units operated during the policy period.

**FOR RENTAL OR LEASING CONCERNS**

"Gross Receipts" means the total amount to which "you" are entitled for the leasing or rental of "autos" during the policy period and includes taxes except those taxes which "you" collect as a separate item and remit directly to a governmental division.

"Mileage" means the total of all live and dead mileage developed by all the "autos" "you" leased or rented to others during the policy period.

Includes copyrighted material of ISO, with its permission. Copyright, ISO, 1985

COMMERCIAL AUTO
CA 00 01 03 06

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V - Definitions.

**SECTION I - COVERED AUTOS**

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | | Description Of Covered Auto Designation Symbols |
|---|---|---|
| 1 | Any "Auto" | |
| 2 | Owned "Autos" Only | Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| 3 | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| 4 | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| 5 | Owned "Autos" Subject To No-Fault | Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have No-Fault benefits in the state where they are licensed or principally garaged. |
| 6 | Owned "Autos" Subject To A Compulsory Uninsured | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| 8 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| 9 | Nonowned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs. |

| 19 | Mobile Equip-ment Subject To Compulsory Or Financial Re-sponsibility Or Other Motor Ve-hicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |
|---|---|---|

**B. Owned Autos You Acquire After The Policy Begins**

1. If Symbols **1, 2, 3, 4, 5, 6** or **19** are entered next to a coverage in Item Two of the Declara-tions, then you have coverage for "autos" that you acquire of the type described for the re-mainder of the policy period.

2. But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that cover-age only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that cover-age; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that cover-age.

**C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos**

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also cov-ered "autos" for Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substi-tute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;
   b. Repair;
   c. Servicing;
   d. "Loss"; or
   e. Destruction.

**SECTION II - LIABILITY COVERAGE**

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "acci-dent" and resulting from the ownership, mainte-nance or use of covered "autos". However, we will only pay for the "covered pollution cost or ex-pense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "prop-erty damage" or a "covered pollution cost or ex-pense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insur-ance has been exhausted by payment of judg-ments or settlements.

1. **Who Is An Insured**

   The following are "insureds":

   a. You for any covered "auto".

   b. Anyone else while using with your permis-sion a covered "auto" you own, hire or bor-row except:

      (1) The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a cov-ered "auto" you own.

     © ISO Properties, Inc., 2005

**(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**

**a. Supplementary Payments**

We will pay for the "insured":

**(1)** All expenses we incur.

**(2)** Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All costs taxed against the "insured" in any "suit" against the "insured" we defend.

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b. Out-Of-State Coverage Extensions**

While a covered "auto" is away from the state where it is licensed we will:

**(1)** Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" arising out of and in the course of:

**(1)** Employment by the "insured"; or

**(2)** Performing the duties related to the con-
duct of the "insured's" business; or

**b.** The spouse, child, parent, brother or sister
of that "employee" as a consequence of
Paragraph **a.** above.

This exclusion applies:

**(1)** Whether the "insured" may be liable as
an employer or in any other capacity;
and

**(2)** To any obligation to share damages with
or repay someone else who must pay
damages because of the injury.

But this exclusion does not apply to "bodily in-
jury" to domestic "employees" not entitled to
workers' compensation benefits or to liability
assumed by the "insured" under an "insured
contract". For the purposes of the Coverage
Form, a domestic "employee" is a person en-
gaged in household or domestic work per-
formed principally in connection with a resi-
dence premises.

**5. Fellow Employee**

"Bodily injury" to any fellow "employee" of the
"insured" arising out of and in the course of the
fellow "employee's" employment or while per-
forming duties related to the conduct of your
business.

**6. Care, Custody Or Control**

"Property damage" to or "covered pollution cost
or expense" involving property owned or trans-
ported by the "insured" or in the "insured's"
care, custody or control. But this exclusion
does not apply to liability assumed under a
sidetrack agreement.

**7. Handling Of Property**

"Bodily injury" or "property damage" resulting
from the handling of property:

**a.** Before it is moved from the place where it is
accepted by the "insured" for movement
into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to
the place where it is finally delivered by the
"insured".

**8. Movement Of Property By Mechanical
Device**

"Bodily injury" or "property damage" resulting
from the movement of property by a mechani-
cal device (other than a hand truck) unless the
device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out
of the operation of:

**a.** Any equipment listed in Paragraphs **6.b.**
and **6.c.** of the definition of "mobile equip-
ment"; or

**b.** Machinery or equipment that is on, attached
to, or part of, a land vehicle that would qual-
ify under the definition of "mobile equip-
ment" if it were not subject to a compulsory
or financial responsibility law or other motor
vehicle insurance law where it is licensed or
principally garaged.

**10. Completed Operations**

"Bodily injury" or "property damage" arising out
of your work after that work has been com-
pleted or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on
your behalf; and

**b.** Materials, parts or equipment furnished in
connection with such work or operations.

Your work includes warranties or representa-
tions made at any time with respect to the fit-
ness, quality, durability or performance of any
of the items included in Paragraph **a.** or **b.**
above.

Your work will be deemed completed at the
earliest of the following times:

**(1)** When all of the work called for in your
contract has been completed.

**(2)** When all of the work to be done at the
site has been completed if your contract
calls for work at more than one site.

**(3)** When that part of the work done at a job
site has been put to its intended use by
any person or organization other than
another contractor or subcontractor
working on the same project.

Work that may need service, maintenance, cor-
rection, repair or replacement, but which is oth-
erwise complete, will be treated as completed.

**11. Pollution**

"Bodily injury" or "property damage" arising out
of the actual, alleged or threatened discharge,
dispersal, seepage, migration, release or es-
cape of "pollutants":

**a.** That are, or that are contained in any prop-
erty that is:

**(1)** Being transported or towed by, handled,
or handled for movement into, onto or
from, the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage Endorsement, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

**SECTION III - PHYSICAL DAMAGE COVERAGE**

**A. Coverage**

1. We will pay for "loss" to a covered "auto" or its equipment under:

**a. Comprehensive Coverage**

From any cause except:

**(1)** The covered "auto's" collision with another object; or

**(2)** The covered "auto's" overturn.

**b. Specified Causes Of Loss Coverage**

Caused by:

**(1)** Fire, lightning or explosion;

**(2)** Theft;

**(3)** Windstorm, hail or earthquake;

**(4)** Flood;

**(5)** Mischief or vandalism; or

**(6)** The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

 © ISO Properties, Inc., 2005

**c. Collision Coverage**
Caused by:
(1) The covered "auto's" collision with another object; or
(2) The covered "auto's" overturn.

**2. Towing**
We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

**3. Glass Breakage - Hitting A Bird Or Animal - Falling Objects Or Missiles**
If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:
a. Glass breakage;
b. "Loss" caused by hitting a bird or animal; and
c. "Loss" caused by falling objects or missiles.
However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

**4. Coverage Extensions**
**a. Transportation Expenses**
We will pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

**b. Loss Of Use Expenses**
For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by:
(1) Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

(2) Specified Causes Of Loss only if the Declarations indicate that Specified Causes Of Loss Coverage is provided for any covered "auto"; or
(3) Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".
However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

**B. Exclusions**
1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".
   **a. Nuclear Hazard**
   (1) The explosion of any weapon employing atomic fission or fusion; or
   (2) Nuclear reaction or radiation, or radioactive contamination, however caused.
   **b. War Or Military Action**
   (1) War, including undeclared or civil war;
   (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or
   (3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.
2. We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.
3. We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:
   a. Wear and tear, freezing, mechanical or electrical breakdown.
   b. Blowouts, punctures or other road damage to tires.
4. We will not pay for "loss" to any of the following:
   a. Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

© ISO Properties, Inc., 2005

b. Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

c. Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

d. Any accessories used with the electronic equipment described in Paragraph **c.** above.

Exclusions **4.c.** and **4.d.** do not apply to:

a. Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

b. Any other electronic equipment that is:

(1) Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

(2) An integral part of the same unit housing any sound reproducing equipment described in Paragraph **a.** above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

5. We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limit Of Insurance**

1. The most we will pay for "loss" in any one "accident" is the lesser of:

a. The actual cash value of the damaged or stolen property as of the time of the "loss"; or

b. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

2. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

3. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

**SECTION IV - BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

1. **Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

2. **Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

a. In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

(1) How, when and where the "accident" or "loss" occurred;

(2) The "insured's" name and address; and

(3) To the extent possible, the names and addresses of any injured persons and witnesses.

b. Additionally, you and any other involved "insured" must:

(1) Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

**c.** If there is "loss" to a covered "auto" or its equipment you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment - Physical Damage Coverages**

At our option we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**4. No Benefit To Bailee - Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

**5. Other Insurance**

   **a.** For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

      **(1)** Excess while it is connected to a motor vehicle you do not own.

      **(2)** Primary while it is connected to a covered "auto" you own.

   **b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

   **c.** Regardless of the provisions of Paragraph a. above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

   **d.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

   **a.** The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

   **b.** If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

   **a.** During the policy period shown in the Declarations; and

   **b.** Within the coverage territory.

The coverage territory is:

   **a.** The United States of America;

   **b.** The territories and possessions of the United States of America;

   **c.** Puerto Rico;

   **d.** Canada; and

   **e.** Anywhere in the world if:

      **(1)** A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

      **(2)** The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

**SECTION V - DEFINITIONS**

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

   **1.** A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

2. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

D. "Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

2. Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured";

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs b. and c. above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

E. "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

F. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

G. "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

H. "Insured contract" means:

1. A lease of premises;

2. A sidetrack agreement;

3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

© ISO Properties, Inc., 2005

4. An obligation, as required by ordinance, to in-demnify a municipality, except in connection with work for a municipality;

5. That part of any other contract or agreement pertaining to your business (including an in-demnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the ab-sence of any contract or agreement;

6. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employ-ees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

  a. That indemnifies a railroad for "bodily injury" or "property damage" arising out of con-struction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing; or

  b. That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

  c. That holds a person or organization en-gaged in the business of transporting prop-erty by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

I. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

J. "Loss" means direct and accidental loss or dam-age.

K. "Mobile equipment" means any of the following types of land vehicles, including any attached ma-chinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, main-tained primarily to provide mobility to perma-nently mounted:

  a. Power cranes, shovels, loaders, diggers or drills; or

  b. Road construction or resurfacing equipment such as graders, scrapers or rollers.

5. Vehicles not described in Paragraph 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to per-manently attached equipment of the following types:

  a. Air compressors, pumps and generators, including spraying, welding, building clean-ing, geophysical exploration, lighting and well servicing equipment; or

  b. Cherry pickers and similar devices used to raise or lower workers.

6. Vehicles not described in Paragraph 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

  a. Equipment designed primarily for:

    (1) Snow removal;

    (2) Road maintenance, but not construction or resurfacing; or

    (3) Street cleaning;

  b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

  c. Air compressors, pumps and generators, including spraying, welding, building clean-ing, geophysical exploration, lighting or well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally ga-raged. Land vehicles subject to a compulsory or fi-nancial responsibility law or other motor vehicle in-surance law are considered "autos".

L. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

M. "Property damage" means damage to or loss of use of tangible property.

**N.** "Suit" means a civil proceeding in which:

    **1.** Damages because of "bodily injury" or "property damage"; or

    **2.** A "covered pollution cost or expense",

to which this insurance applies, are alleged. "Suit" includes:

    **a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

    **b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

© ISO Properties, Inc., 2005

CA 00 01 03 06   □

**STATED AMOUNT INSURANCE**

M-3912b (8/2001)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

    TRUCKERS COVERAGE FORM
    BUSINESS AUTO COVERAGE FORM

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below, and applies only to those vehicles and coverages indicated below or as may be subsequently added to the policy by endorsement and for which physical damage coverage is afforded and for which a limit of liability is indicated. Vehicle numbers refer to the vehicle number and corresponding vehicle described in the schedule of automobiles attached to this policy.

| VEHICLE NUMBER | LIMIT OF LIABILITY | DEDUCTIBLE | COVERAGE | |
|---|---|---|---|---|
| See M-4959a (03/2002) | $ | $ | ☐ Collision | |
| | | $ | ☐ Comprehensive | ☐ Specified Causes of Loss |

For a covered auto described in this endorsement:

BUSINESS AUTO COVERAGE FORM - SECTION III - PHYSICAL DAMAGE COVERAGE - SUBSECTION C - LIMIT OF INSURANCE and SUBSECTION D - DEDUCTIBLE or TRUCKERS COVERAGE FORM - SECTION IV - PHYSICAL DAMAGE SUBSECTION C - LIMITS OF INSURANCE and SUBSECTION D - DEDUCTIBLE are changed to read:

**C. - Limit of Insurance**
1. The most we will pay for "loss" in any one "accident" is the lesser of:
    a. The limit of liability shown in the schedule of this endorsement for the involved "auto", or
    b. The actual cash value of the damaged or stolen "auto" as of the time of the "loss", or
    c. The cost of repairing or replacing the damaged or stolen "auto" with another of like kind or quality,

    less the applicable deductible.
2. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".
3. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. - Deductible**
For each covered "auto", our obligation to pay for, repair, return or replace the damaged or stolen auto will be reduced by the applicable deductible shown in this endorsement.

BUSINESS AUTO COVERAGE FORM - SECTION IV - BUSINESS AUTO CONDITIONS - SUBSECTION A.4 - LOSS PAYMENT - PHYSICAL DAMAGE COVERAGES or TRUCKERS COVERAGE FORM - SECTION V - TRUCKERS CONDITIONS - SUBSECTION A.4 - LOSS PAYMENT - PHYSICAL DAMAGE COVERAGES is changed to read:

**4. Loss Payment - Physical Damage Coverages**

    At our option we may:
    a. Pay for, repair or replace the damaged or stolen "auto"; or
    b. Return the stolen "auto", at our expense. We will pay for any damage that results to the "auto" from the theft; or
    c. Take all or any part of the damaged or stolen "auto" at an agreed or appraised value. If we pay either the scheduled limit of liability for that "auto" or its actual cash value, we are entitled to all salvage.

If we pay for the "loss", we will also include payment of the applicable sales tax for the damaged or stolen "auto".

All other terms, conditions and agreements of the policy shall remain unchanged.

| Company Name | Policy Number |
|---|---|
| **National Indemnity Company of the South** | **74 APS 062192** |
| | Endorsement Effective |
| | **01/05/2016 12:01 AM** |
| Named Insured | Countersigned by |
| **MA ALTERNATIVE TRANSPORT SERVICE, INC.** | |
| | (Authorized Representative) |

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

01/20/2016 09:04 261AF4E8-15DC-4821-B8CE-BAF5380D2079

M-5364 (11/2008)

# FLORIDA RENEWAL NOTICE
## UNINSURED MOTORIST COVERAGE OPTIONS

This notice provides a brief explanation of your Uninsured Motorist Coverage options. This notice is for informational purposes only and does not become a part or condition of the attached policy. If you have any questions regarding your coverage or wish to change your policy, please contact your agent.

1. You may purchase Uninsured Motorist Coverage at limits equal to your Bodily Injury Liability limits.

2. You may purchase Uninsured Motorist Coverage at limits less than your Bodily Injury Liability limits.

3. You may reject Uninsured Motorist Coverage entirely.

4. You may purchase Stacked or Non-Stacked Uninsured Motorist Coverage. The premium for Stacked Uninsured Motorist Coverage may be higher than the premium for Non-Stacked Uninsured Motorist Coverage.

POLICY NUMBER: **74 APS 062192**

COMMERCIAL AUTO<br>CA 22 10 01 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA PERSONAL INJURY PROTECTION

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Florida, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| | |
|---|---|
| **Named Insured:** | **MA ALTERNATIVE TRANSPORT SERVICE, INC.** |
| **Endorsement Effective Date:** | **01/05/2016 12:01 AM** |

We agree with the "named insured", subject to all the provisions of this endorsement and to all of the provisions of the policy except as modified herein, as follows that:

SCHEDULE

Any Personal Injury Protection deductible shown in the Declarations of $   **N/A**
is applicable to   [X]   the following "named insured" only:
   [ ]   each "named insured" and each dependent "family member".

[ ] Work loss for "named insured" does not apply.
[ ] Work loss for "named insured" and dependent "family member" does not apply.

| Benefits | Limit Per Person |
|---|---|
| Total Aggregate Limit for all Personal Injury Protection Benefits, except Death Benefits | $10,000 |
| Death Benefits | $5,000 |
| Medical Expenses | 80% of medical expenses subject to the total aggregate limit and the provisions of Paragraphs **D.2.a.** and **b.** under Limit Of Insurance. |
| Work Loss Replacement Services Expenses | 60% of work loss subject to the total aggregate limit subject to the total aggregate limit |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

 © Insurance Services Office, Inc., 2013

**A. Coverage**

We will pay Personal Injury Protection benefits in accordance with the Florida Motor Vehicle No-fault Law to or for an "insured" who sustains "bodily injury" in an "accident" arising out of the ownership, maintenance or use of a "motor vehicle". Subject to the limits shown in the Schedule, these Personal Injury Protection benefits consist of the following:

**1. Medical Expenses**

a. All reasonable "medically necessary" expenses for medical, surgical, X-ray, dental, ambulance, hospital, professional nursing and rehabilitative services, including prosthetic devices. However, we will pay for these benefits only if the "insured" receives initial services and care within 14 days after the "motor vehicle" "accident" that are:

(1) Lawfully provided, supervised, ordered or prescribed by a licensed physician, dentist or chiropractic physician;

(2) Provided in a hospital or in a facility that owns, or is wholly owned by, a hospital; or

(3) Provided by a person or entity licensed to provide emergency transportation and treatment;

as authorized by the Florida Motor Vehicle No-fault Law.

b. Upon referral by a licensed health care provider described in Paragraph **A.1.a.(1)**, **(2)** or **(3)**, follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to Paragraph **A.1.a.**, if provided, supervised, ordered or prescribed only by a licensed:

(1) Physician, osteopathic physician, chiropractic physician or dentist; or

(2) Physician assistant or advanced registered nurse practitioner, under the supervision of such physician, osteopathic physician chiropractic physician or dentist;

as authorized by the Florida Motor Vehicle No-fault Law.

Follow-up services and care may also be provided by:

(3) A licensed hospital or ambulatory surgical center;

(4) An entity wholly owned by one or more licensed physicians, osteopathic physicians, chiropractic physicians or dentists; or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

(5) An entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

(6) A licensed physical therapist, based upon referral by a provider described in Paragraph **A.1.b**; or

(7) A health care clinic licensed under the Florida Health Care Clinic Act:

(a) Which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities or the Accreditation Association for Ambulatory Health Care, Inc.; or

(b) Which:

(I) Has a licensed medical director;

(II) Has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

(iii) Provides at least four of the following medical specialties:

I. General medicine;

II. Radiography;

III. Orthopedic medicine;

IV. Physical medicine;

V. Physical therapy;

VI. Physical rehabilitation;

VII. Prescribing or dispensing outpatient prescription medication; or

VIII. Laboratory services;

as authorized by the Florida Motor Vehicle No-fault Law.

However, with respect to Paragraph **A.1.**, medical expenses do not include massage or acupuncture, regardless of the person, entity or licensee providing the massage or acupuncture;

 © Insurance Services Office, Inc., 2013

2. **Replacement Services Expenses**
   With respect to the period of disability of the injured person, all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for such injury, the injured person would have performed without income for the benefit of his or her household;

3. **Work Loss**
   With respect to the period of disability of the injured person, any loss of income and earning capacity from inability to work proximately caused by the injury sustained by the injured person; and

4. **Death Benefits**

**B. Who Is An Insured**

1. The "named insured".
2. If the "named insured" is an individual, any "family member".
3. Any other person while "occupying" a covered "motor vehicle" with the "named insured's" consent.
4. A "pedestrian" if the "accident" involves the covered "motor vehicle".

**C. Exclusions**

We will not pay Personal Injury Protection benefits for "bodily injury":

1. Sustained by the "named insured" or any "family member" while "occupying" any "motor vehicle" owned by the "named insured" that is not a covered "motor vehicle";
2. Sustained by any person while operating the covered "motor vehicle" without the "named insured's" expressed or implied consent;
3. Sustained by any person, if such person's conduct contributed to his or her "bodily injury" under any of the following circumstances:
   a. Causing "bodily injury" to himself or herself intentionally; or
   b. While committing a felony;
4. To the "named insured" or any "family member" for work loss if an entry in the Schedule or Declarations indicates that coverage for work loss does not apply;
5. To any "pedestrian", other than the "named insured" or any "family member", not a legal resident of the state of Florida;

6. To any person, other than the "named insured", if that person is the "owner" of a "motor vehicle" for which security is required under the Florida Motor Vehicle No-fault Law;
7. To any person, other than the "named insured", or any "family member", who is entitled to personal injury protection benefits from the owner of a "motor vehicle" that is not a covered "motor vehicle" under this insurance or from the "owner's" insurer; or
8. To any person who sustains "bodily injury" while "occupying" a "motor vehicle" located for use as a residence or premises.

**D. Limit Of Insurance**

1. Regardless of the number of persons insured, policies or bonds applicable, premiums paid, vehicles involved or claims made, the total aggregate limit of personal injury protection benefits, available under the Florida Motor Vehicle No-fault Law from all sources combined, including this policy, for or on behalf of any one person who sustains "bodily injury" as the result of any one "accident", shall be:
   a. $10,000 for medical expenses, work loss and replacement services; and
   b. $5,000 for death benefits.
2. Subject to Paragraph **D.1.a.**, we will pay:
   a. Up to $10,000 for medical expenses, if a licensed physician, dentist, physician assistant or an advanced registered nurse practitioner authorized by the Florida Motor Vehicle No-fault Law has determined that the "insured" had an "emergency medical condition"; or
   b. Up to $2,500 for medical expenses, if any health care provider described in Paragraph **A.1.a.** or **A.1.b.** has determined that the "insured" did not have an "emergency medical condition".
3. Any amount paid under this coverage will be reduced by the amount of benefits an injured person has been paid or is entitled to be paid for the same elements of "loss" under any workers' compensation law.

© Insurance Services Office, Inc., 2013

4. If personal injury protection benefits, under the Florida Motor Vehicle No-fault Law, have been received from any insurer for the same elements of loss and expense benefits available under this policy, we will not make duplicate payments to or for the benefit of the injured person. The insurer paying the benefits shall be entitled to recover from us its pro rata share of the benefits paid and expenses incurred in handling the claim.

5. The deductible amount shown in the Schedule will be deducted from the total amount of expenses and losses listed in Paragraphs **A.1.**, **A.2.** and **A.3.** of this endorsement before the application of any percentage limitation for each "insured" to whom the deductible applies. The deductible does not apply to the death benefit.

6. Any amount paid under this coverage for medical expenses may be limited by the medical fee schedule prescribed by the Florida Motor Vehicle No-fault Law.

**E. Changes In Conditions**

The **Conditions** are changed for **Personal Injury Protection** as follows:

1. **Duties In The Event Of Accident, Claim, Suit Or Loss** is replaced by the following:
Compliance with the following duties is a condition precedent to receiving benefits:
In the event of an "accident", the "named insured" must give us or our authorized representative prompt written notice of the "accident".

If any injured person or his or her legal representative institutes a legal action to recover damages for "bodily injury" against a third party, a copy of the summons, complaint or other process served in connection with that legal action must be forwarded to us as soon as possible by the injured person or his or her legal representative.

A person seeking personal injury protection benefits must, as soon as possible, give us written proof of claim, under oath if required, containing full particulars concerning the injuries and treatment received and/or contemplated, and send us any other information that will assist us in determining the amount due and payable.

A person seeking personal injury protection benefits must submit to an examination under oath. The scope of questioning during the examination under oath is limited to relevant information or information that could reasonably be expected to lead to relevant information.

2. **Legal Action Against Us** is replaced by the following:
**Legal Action Against Us**

a. No legal action may be brought against us until there has been full compliance with all terms of this policy. In addition, no legal action may be brought against us:

(1) Until the claim for benefits is overdue in accordance with Paragraph **F.2.** of this endorsement; and

(2) Until we are provided with a demand letter in accordance with the Florida Motor Vehicle No-fault Law sent to us via U.S. certified or registered mail; and

(3) With respect to the overdue claim specified in the demand letter, if, within 30 days of receipt of the demand letter, we:

(a) Pay the overdue claim; or

(b) Agree to pay for future treatment not yet rendered;

in accordance with the requirements of the Florida Motor Vehicle No-fault Law.

b. If legal action is brought against us, all claims related to the same health care provider or facility shall be brought in a single action, unless good cause can be shown why such claims should be brought separately.

    © Insurance Services Office, Inc., 2013    CA 22 10 01 13

3. **Transfer Of Rights Of Recovery Against Others To Us** is replaced by the following:

   **Transfer Of Rights Of Recovery Against Others To Us**

   Unless prohibited by the Florida Motor Vehicle No-fault Law, in the event of payment to or for the benefit of any injured person under this coverage:

   a. We will be reimbursed for those payments, not including reasonable attorneys' fees and other reasonable expenses, from the proceeds of any settlement or judgment resulting from any right of recovery of the injured person against any person or organization legally responsible for the "bodily injury" from which the payment arises. We will also have a lien on those proceeds.

   b. If any person to or for whom we pay benefits has rights to recover benefits from another, those rights are transferred to us. That person must do everything necessary to secure our rights and must do nothing after loss to impair them.

   c. The insurer providing personal injury protection benefits on a private passenger "motor vehicle", as defined in the Florida Motor Vehicle No-fault Law, shall be entitled to reimbursement to the extent of the payment of personal injury protection benefits from the "owner" or the insurer of the "owner" of a commercial "motor vehicle", as defined in the Florida Motor Vehicle No-fault Law, if such injured person sustained the injury while "occupying", or while a "pedestrian" through being struck by, such commercial "motor vehicle". However, such insurer's right of reimbursement under this Paragraph **c.** does not apply to an "owner" or registrant of a "motor vehicle" used as a taxicab.

4. **Concealment, Misrepresentation Or Fraud** is replaced by the following:

   **Concealment, Misrepresentation Or Fraud**

   We do not provide coverage under this endorsement for an "insured" if that "insured" has committed, by a material act or omission, insurance fraud relating to personal injury protection coverage under this form, if fraud is admitted to in a sworn statement by the "insured" or if the fraud is established in a court of competent jurisdiction. Any insurance fraud voids all personal injury protection coverage arising from the claim with respect to the "insured" who committed the fraud. Any benefits paid prior to the discovery of the fraud are recoverable from that "insured".

5. **Policy Period, Coverage Territory** is replaced by the following:

   **Policy Period, Coverage Territory**

   The insurance under this section applies only to "accidents" which occur during the policy period:

   a. In the state of Florida;

   b. As respects the "named insured" or any "family member", while "occupying" the covered "motor vehicle" outside the state of Florida but within the United States of America, its territories or possessions or Canada; and

   c. As respects the "named insured", while "occupying" a "motor vehicle" of which a "family member" is the "owner" and for which security is maintained under the Florida Motor Vehicle No-fault Law outside the state of Florida but within the United States of America, its territories or possessions or Canada.

© Insurance Services Office, Inc., 2013

**F. Additional Conditions**

The following conditions are added:

1. **Mediation**

   a. In any claim filed by an "insured" with us for:

      (1) "Bodily injury" in an amount of $10,000 or less, arising out of the ownership, operation, use or maintenance of a covered "auto";

      (2) "Property damage" in any amount, arising out of the ownership, operation, maintenance or use of a covered "auto"; or

      (3) "Loss" to a covered "auto" or its equipment, in any amount, either party may make a written demand for mediation of the claim prior to the institution of litigation.

   b. A written request for mediation must be filed with the Florida Department of Financial Services on an approved form, which may be obtained from the Florida Department of Financial Services.

   c. The request must state:

      (1) Why mediation is being requested.

      (2) The issues in dispute, which are to be mediated.

   d. The Florida Department of Financial Services will randomly select mediators. Each party may reject one mediator, either before or after the opposing side has rejected a mediator. The mediator will notify the parties of the date, time and place of the mediation conference. The mediation conference will be held within 45 days of the request for mediation. The conference will be held by telephone, if feasible. Participants in the mediation conference must have the authority to make a binding decision, and must mediate in good faith. Each party will bear the expenses of the mediation equally, unless the mediator determines that one party has not mediated in good faith.

   e. Only one mediation may be requested for each claim unless all parties agree to further mediation. A party demanding mediation shall not be entitled to demand or request mediation after a suit is filed relating to the same facts already mediated.

   f. The mediation shall be conducted as an informal process and formal rules of evidence and procedures need not be observed.

2. **Payment Of Benefits**

   Personal injury protection benefits payable under this Coverage Form, whether the full or partial amount, may be overdue if not paid within 30 days after we are furnished with written notice of the covered loss and the amount of the covered loss in accordance with the Florida Motor Vehicle No-fault Law. However, if we have a reasonable belief that a fraudulent insurance act has been committed relating to personal injury protection coverage under this Coverage Form, we will notify the "insured" in writing, within 30 days after the submission of the claim, that the claim is being investigated for suspected fraud. No later than 90 days after the submission of the claim, we will either deny or pay the claim, in accordance with the Florida Motor Vehicle No-fault Law.

   If we pay only a portion of a claim or reject a claim due to an alleged error in the claim, we, at the time of the partial payment or rejection, will provide an itemized specification or explanation of benefits due to the specified error. Upon receiving the specification or explanation, the person making the claim, at the person's option and without waiving any other legal remedy for payment, has 15 days to submit a revised claim, which will be considered a timely submission of written notice of a claim.

3. **Modification Of Policy Coverages**

   Any Automobile Medical Payments Coverage and any Uninsured Motorists Coverage afforded by the policy shall be excess over any personal injury protection benefits paid or payable.

   Regardless of whether the full amount of personal injury protection benefits has been exhausted, any Medical Payments Coverage afforded by the policy shall pay the portion of any claim for personal injury protection medical expenses which are otherwise covered but not payable due to the limitation of 80% of medical expense benefits but shall not be payable for the amount of the deductible selected.

© Insurance Services Office, Inc., 2013

CA 22 10 01 13

4. **Medical Reports And Examinations; Payment Of Claim Withheld**

As soon as practicable, the person making the claim shall submit to mental and physical examinations at our expense when and as often as we may reasonably require and a copy of the medical report shall be forwarded to such person if requested. If the person unreasonably refuses to submit to, or fails to appear at, an examination, we will not be liable for subsequent personal injury protection benefits. Such person's refusal to submit to, or failure to appear at, two examinations, raises a rebuttable presumption that such person's refusal or failure was unreasonable.

Whenever a person making a claim as a result of an injury sustained while committing a felony is charged with committing that felony, we shall withhold benefits until, at the trial level, the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

5. **Provisional Premium**

In the event of any change in the rules, rates, rating plan, premiums or minimum premiums applicable to the insurance afforded, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Motor Vehicle No-fault Law providing for the exemption of persons from tort liability, the premium stated in the Declarations for any Liability, Medical Payments and Uninsured Motorists insurance shall be deemed provisional and subject to recomputation. If this policy is a renewal policy, such recomputation shall also include a determination of the amount of any return premium previously credited or refunded to the "named insured" pursuant to the Florida Motor Vehicle No-fault Law with respect to insurance afforded under a previous policy.

If the final premium thus recomputed exceeds the premium shown in the Declarations, the "named insured" shall pay to us the excess as well as the amount of any return premium previously credited or refunded.

6. **Special Provisions For Rented Or Leased Vehicles**

Notwithstanding any provision of this coverage to the contrary, if a person is injured while "occupying", or through being struck by, a "motor vehicle" rented or leased under a rental or lease agreement which does not specify otherwise in language required by FLA. STAT. SECTION 627.7263(2) in at least 10-point type on the face of the agreement, the personal injury protection benefits available under the Florida Motor Vehicle No-fault Law and afforded under the lessor's policy shall be primary.

7. **Insured's Right To Personal Injury Protection Information**

a. In a dispute between us and an "insured", or between us and an assignee of the "insured's" personal injury protection benefits, we will, upon request, notify such "insured" or assignee that the limits for Personal Injury Protection have been reached. We will provide such information within 15 days after the limits for Personal Injury Protection have been reached.

b. If legal action is commenced, we will, upon request, provide an "insured" with a copy of a log of personal injury protection benefits paid by us on behalf of the "insured". We will provide such information within 30 days of receipt of the request for the log from the "insured".

**G. Additional Definitions**

As used in this endorsement:

1. "Emergency medical condition" means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:
   a. Serious jeopardy to "insured's" health;
   b. Serious impairment to bodily functions; or
   c. Serious dysfunction of any bodily organ part.

2. "Motor vehicle" means any self-propelled vehicle with four or more wheels which is of a type both designed and required to be licensed for use on the highways of Florida and any trailer or semitrailer designed for use with such vehicle.

   However, "motor vehicle" does not include:
   a. A mobile home;
   b. Any "motor vehicle" which is used in mass transit, other than public school transportation, and designed to transport more than five passengers exclusive of the operator of the motor vehicle and which is owned by a municipality, a transit authority or a political subdivision of the state.

3. "Family member" means a person related to the "named insured" by blood, marriage or adoption, including a ward or foster child, who is a resident of the same household as the "named insured".

4. "Named insured" means the person or organization named in the Declarations of the policy and, if an individual, shall include the spouse if a resident of the same household.

5. "Occupying" means in or upon or entering into or alighting from.

6. "Owner" means a person or organization who holds the legal title to a "motor vehicle" and also includes:
   a. A debtor having the right to possession, in the event a "motor vehicle" is the subject of a security agreement;
   b. A lessee having the right to possession, in the event a "motor vehicle" is the subject of a lease with option to purchase and such lease agreement is for a period of six months or more; and
   c. A lessee having the right to possession, in the event a "motor vehicle" is the subject of a lease without option to purchase, and such lease is for a period of six months or more, and the lease agreement provides that the lessee shall be responsible for securing insurance.

7. "Pedestrian" means a person while not an occupant of any self-propelled vehicle.

8. "Medically necessary" refers to a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing or treating an illness, injury, disease or symptom in a manner that is:
   a. In accordance with generally accepted standards of medical practice;
   b. Clinically appropriate in terms of type, frequency, extent, site and duration; and
   c. Not primarily for the convenience of the patient, physician or other health care provider.

   © Insurance Services Office, Inc., 2013   CA 22 10 01 13

M-5698 (01/2013)

# FLORIDA PIP NOTIFICATION

### Use of Medical Fee Schedule for Personal Injury Protection Claims

We will limit reimbursement of medical expenses to 80 percent of a properly billed reasonable charge, and may further limit payment to no more than 80 percent of the following schedule of maximum charges:

  a. For emergency transport and treatment by providers licensed under Chapter 401, Florida Statutes, 200 percent of Medicare.
  b. For emergency services and care provided by a hospital licensed under Chapter 395, Florida Statutes, 75 percent of the hospital's usual and customary charges.
  c. For emergency services and care as defined by s. 395.002(9), Florida Statutes, provided in a facility licensed under Chapter 395, Florida Statutes, rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.
  d. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.
  e. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.
  f. For all other medical services, supplies, and care, 200 percent of the allowable amount under:
      I. The participating physicians fee schedule of Medicare Part B, except as provided in paragraphs II. and III.
      II. Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.
      III. The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.
      However, if such services, supplies, or care is not reimbursable under Medicare Part B, as provided in this Paragraph f., we may limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13, Florida Statutes, and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by us.

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ELIMINATION OF
# LIMITED WORLDWIDE COVERAGE FOR HIRED AUTOS

This endorsement modifies insurance provided under the following:

> BUSINESS AUTO COVERAGE FORM
> TRUCKERS COVERAGE FORM
> GARAGE COVERAGE FORM

**Section IV — Business Auto Conditions, Section V — Truckers Conditions, and Section V — Garage Conditions** are changed as follows:

Paragraph **7.e** of the **Policy Period, Coverage Territory** Condition is deleted in its entirety.

All other terms, conditions and agreements of the policy shall remain unchanged.

| Company Name | Policy Number |
|---|---|
| **National Indemnity Company of the South** | **74 APS 062192** |
| | Endorsement Effective |
| | **01/05/2016 12:01 AM** |
| Named Insured | Countersigned by |
| **MA ALTERNATIVE TRANSPORT SERVICE, INC.** | |
| | (Authorized Representative) |

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

M-5056 (8/2001)

01/20/2016 09:04 261AF4E8-15DC-4821-B8CE-BAF5380D2079

COMMERCIAL AUTO
CA 01 28 03 09

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Florida, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Physical Damage Coverage** is changed as follows:

1. No deductible applies under Specified Causes of Loss or Comprehensive coverage for "loss" to glass used in the windshield.

2. All other **Physical Damage Coverage** provisions will apply.

3. Paragraph **1.** of Loss Conditions, **Appraisal For Physical Damage Loss,** is replaced by the following:

   1. **Appraisal For Physical Damage Loss**
      If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". Upon notice of a demand for appraisal, the opposing party may, prior to appraisal, demand mediation of the dispute in accordance with the Mediation provision contained in this endorsement. The mediation must be completed before a demand for appraisal can be made. In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
      a. Pay its chosen appraiser; and
      b. Bear the other expenses of the appraisal and umpire equally.
      If we submit to an appraisal, we will still retain our right to deny the claim.

**B.** The **General Conditions** are amended as follows:

1. The following is added to the **Other Insurance** Condition in the Business Auto and Garage Coverage Forms, and **Other Insurance – Primary And Excess Provisions** Condition in the Truckers and Motor Carrier Coverage Forms:

   a. When this Coverage Form and any other Coverage Form or policy providing liability coverage applies to an "auto" and:
      (1) One provides coverage to a lessor of "autos" for rent or lease; and
      (2) The other provides coverage to a person not described in Paragraph **B.1.a.(1),**
   then the Coverage Form or policy issued to the lessor described in Paragraph **B.1.a.(1)** is excess over any insurance available to a person described in **B.1.a.(2)** if the face of the lease or rental agreement contains, in at least 10 point type, the following language:
      The valid and collectible liability insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection coverage required by FLA. STAT. SECTION 324.021(7) and FLA. STAT. SECTION 627.736.

01/20/2016 09:04 261AF4E8-15DC-4821-B8CE-BAF5380D2079

© Insurance Services Office, Inc., 2008

2. The following condition is added to the Business Auto, Garage, Truckers and Motor Carrier Coverage Forms:

**Mediation**

1. In any claim filed by an "insured" with us for:

   a. "Bodily injury" in an amount of $10,000 or less, arising out of the ownership, operation, use or maintenance of a covered "auto";

   b. "Property damage" in any amount, arising out of the ownership, operation, maintenance or use of a covered "auto", or

   c. "Loss" to a covered "auto" or its equipment, in any amount;

   either party may make a written demand for mediation of the claim prior to the institution of litigation.

2. A written request for mediation must be filed with the Florida Department of Financial Services on an approved form, which may be obtained from the Florida Department of Financial Services.

3. The request must state:

   a. Why mediation is being requested.

   b. The issues in dispute, which are to be mediated.

4. The Florida Department of Financial Services will randomly select mediators. Each party may reject one mediator, either before or after the opposing side has rejected a mediator. The mediator will notify the parties of the date, time and place of the mediation conference. The mediation conference will be held within 45 days of the request for mediation. The conference will be held by telephone if feasible. Participants in the mediation conference must have the authority to make a binding decision, and must mediate in good faith. Each party will bear the expenses of the mediation equally, unless the mediator determines that one party has not mediated in good faith.

5. Only one mediation may be requested for each claim unless all parties agree to further mediation. A party demanding mediation shall not be entitled to demand or request mediation after a suit is filed relating to the same facts already mediated.

6. The mediation shall be conducted as an informal process and formal rules of evidence and procedures need not be observed.

   © Insurance Services Office, Inc., 2008   CA 01 28 03 09   ☐

M-4009a (12/1998)

# LOSS CONTROL PROGRAM

In accordance with Florida Law, we have developed for your use a Risk Management Program. This Program provides you with guidelines for establishing a safety program. Additional personalized loss control services are also available from us or our contractor at your expense. If you wish to receive a free copy of our Risk Management Program or learn about other Loss Control services we offer, please write to:

☐ NATIONAL INDEMNITY COMPANY
☐ NATIONAL LIABILITY & FIRE INSURANCE COMPANY
☒ NATIONAL INDEMNITY COMPANY OF THE SOUTH
☐ NATIONAL FIRE & MARINE INSURANCE COMPANY
☐ COLUMBIA INSURANCE COMPANY

Attn: Loss Control Department
3024 Harney Street
Omaha, Nebraska 68131

01/20/2016 09:04 261AF4E8-15DC-4821-B8CE-BAF5380D2079

M-5535 (10/2010)

# POLICYHOLDERS NOTICE – FLORIDA

As required by Florida Statute 324.0221(1)(b), if this policy is cancelled or nonrenewed either by you or us, this information will be reported by us to the Department of Highway Safety and Motor Vehicles.

Also, failure by you to maintain personal injury protection and property damage liability insurance on a motor vehicle when required by law may result in the loss of registration and driving privileges in this state. Florida Statute 324.0221(3) advises any operator or owner whose driver's license or registration has been suspended for failing to maintain personal injury protection and property damage liability insurance may effect reinstatement upon compliance by making payment to the Department of Highway Safety and Motor Vehicles of a nonrefundable reinstatement fee of $150 for the first reinstatement, $250 for the second reinstatement and $500 for each subsequent reinstatement during the three years following the first reinstatement.

COMMERCIAL AUTO
CA  20 18 12 93

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PROFESSIONAL SERVICES NOT COVERED

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

LIABILITY COVERAGE is changed by adding the following exclusions:

This insurance does not apply to:

1.  "Bodily injury" resulting from the providing or the failure to provide any medical or other professional services.

2.  "Bodily injury" resulting from food or drink furnished with these services.

3.  "Bodily injury" or "property damage" resulting from the handling of corpses.

01/20/2016 09:04 261AF4E8-15DC-4821-B8CE-BAF5380D2079

CA 20 18 12 93         Copyright, Insurance Services Office, Inc., 1993         Page 1 of 1    □

COMMERCIAL AUTO
CA 24 02 12 93

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PUBLIC TRANSPORTATION AUTOS

This endorsement modifies insurance provided under the following:

    BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

LIABILITY COVERAGE for a covered "auto" licensed or used to transport the public is changed as follows:

The CARE, CUSTODY OR CONTROL exclusion does not apply to "property damage" to or "covered pollution cost or expense" involving property of the "insured's" passengers while such property is carried by the covered "auto".

01/20/2016 09:04 261AF4E8-15DC-4821-B8CE-BAF5380D2079

     Copyright, Insurance Services Office, Inc., 1993      ☐

M-5381 (01/2013)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES – CANCELLATION AND NONRENEWAL

**A.** Paragraph **A.2.** of the Common Policy Conditions, **Cancellation**, is changed to read as follows:

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
**b.** 45 days before the effective date of cancellation if we cancel for any other reason.

However, if your financial institution does not honor your initial premium payment for any reason then your policy is void from inception unless the nonpayment is cured within the earlier of 15 days after we send notice of cancellation by certified mail or 5 days after you receive the notice.

The notice of cancellation will state the reason(s) for the cancellation.

**B.** Paragraph **A.5.** of the Common Policy Conditions, **Cancellation**, is replaced by the following:

**5.** If this policy is canceled, we will send the first Named Insured any premium refund due. The cancellation will be effective even if we have not made or offered a refund.

**a.** If we cancel, the refund will be pro rata. If the return premium is not refunded with the notice of cancellation, we will mail the refund within 15 days after the effective date of cancellation, unless this is an audit policy.
**b.** If the first Named Insured cancels, the refund may be less than pro rata. We will mail the refund within 30 days after the effective date of cancellation or receipt of notice or request for cancellation, whichever is later, unless this is an audit policy.
**c.** If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

**C.** The following is added to Paragraph **A.** of the Common Policy Conditions, **Cancellation:**

**7.** If this policy provides Personal Injury Protection, Property Damage Liability Coverage or both and:

**a.** It is a new or renewal policy, it may not be canceled by the Named Insured during the first 60 days immediately following the effective date of the policy or renewal, except for one of the following reasons:

**(1)** The covered "auto" is completely destroyed such that it is no longer operable;
**(2)** Ownership of the covered "auto" is transferred; or
**(3)** Another policy or binder covering the motor vehicle insured under this policy has been purchased.

**b.** It is a new policy, we may not cancel for nonpayment of premium during the first 60 days immediately following the effective date of the policy unless the reason for the cancellation is the issuance of a check for the premium that is dishonored for any reason or any other type of premium payment that was subsequently determined to be rejected or invalid.

M-5381 (01/2013)

8. If we have issued a certificate of insurance on your behalf to the Florida Department of Highway Safety & Motor Vehicles pursuant to Florida Statute § 320.02(5)(e) and this policy is canceled, we will provide notice of the cancellation to the Florida Department of Highway Safety & Motor Vehicles in accordance with Florida law.

**D.** The following Condition is added:

**Nonrenewal**

1. If we decide not to renew or continue this policy, we will mail you notice at least 45 days before the end of the policy period. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.
2. If we fail to mail proper notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.
3. Notice of nonrenewal will state the reason(s) for the nonrenewal and the effective date of nonrenewal. The policy period will end on that date.

All other terms, conditions and agreements remain unchanged.

| Company Name | Policy Number | 74 APS 062192 |
|---|---|---|
| National Indemnity Company of the South | Endorsement Effective | 01/05/2016 12:01 AM |
| Named Insured | Countersigned at | |
| MA ALTERNATIVE TRANSPORT SERVICE, INC. | By | |

(Authorized Representative)

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

01/20/2016 09:04 261AF4E8-15DC-4821-B8CE-BAF5380D2079

M-5748 (01/2013)

# EMBARGO AND SANCTION NOTICE

No payments will be made under the terms of this insurance contract to the extent that applicable trade or economic sanctions or other laws or regulations prohibit us from providing insurance or making such payments.

All other terms, conditions and agreements of the policy remain unchanged.

| Company Name | Policy Number |
|---|---|
| **National Indemnity Company of the South** | **74 APS 062192** |
| | Endorsement Effective |
| | **01/05/2016 12:01 AM** |
| Named Insured | Countersigned by |
| **MA ALTERNATIVE TRANSPORT SERVICE, INC.** | |

(Authorized Representative)

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

M-5748 (01/2013)

01/20/2016 09:04 261AF4E8-15DC-4821-B8CE-BAF5380D2079

M-4048a (01/2007)

## HIRED AUTOS ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies and includes additional definitions provided under the following:

BUSINESS AUTO COVERAGE FORM
HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS

ADDITIONAL DEFINITIONS - LIABILITY COVERAGE:

(1) A HIRED "AUTO" is defined as those "autos" you lease, hire, rent or borrow under a verbal or written contract, but does not include any "autos" which are SPECIFICALLY DESCRIBED "AUTOS" nor does it include any "autos" which you lease, hire, rent or borrow from any of your employees or partners or members of their households.

(2) Lease, hiring, renting or borrowing of a HIRED "AUTO" includes:

(i)   operation of a HIRED "AUTO" by you or any person under your direction or control;

(ii)  operation of a HIRED "AUTO" by any person, with your consent, under a state or Interstate Commerce Commission certificate of authority issued to you; or

(iii) transportation of property or passengers by a HIRED "AUTO" under a bill of lading, ticket or any agreement where you are shown as the carrier of the property or passengers.

Lease, hiring, renting or borrowing of a HIRED "AUTO" occurs even if the owner, lessor or lender of such "auto" agrees to indemnify or otherwise hold you harmless from liability in connection with such use and/or procures insurance on your behalf.

LIABILITY COVERAGE - PREMIUM BASIS:

(1) The premium basis is the "Cost of Hire" multiplied by the rate per cost of hire shown under ITEM FOUR - SCHEDULE of the DECLARATIONS. "Cost of Hire" is defined as the amount of money you pay or owe to hire, rent or lease HIRED "AUTOS". You are required to maintain auditable records of your Cost of Hire sufficient to permit us to audit your records and determine the Cost of Hire you have paid or owe during the Policy Period. Cost of Hire or borrowed "autos" or "autos" hired, rented or leased by you at below market rates, shall be adjusted to the comparable gross retail rental charge for the hire, rental or lease of such "autos". The minimum premium for "Autos" hired, rented, leased or borrowed by you and for which you do not maintain auditable records shall be 25% of the premium charged for all specifically described "Autos" insured during the Policy Period, subject to a maximum charge of the annual premium for the highest rated specifically described "Auto" insured during the Policy Period.

(2) Where the owner, lessor, or lender of the "auto" agrees to indemnify or otherwise hold you harmless unconditionally from liability and to defend you in connection with your use of a HIRED "AUTO" and procures minimum liability insurance equal to the limits of this Policy on your behalf, listing you as an insured or additional insured, the insurance premium due for your use of such "auto" shall be calculated using 15% of the rate stated for cost of hire shown under ITEM FOUR - SCHEDULE of the DECLARATIONS. The reduced rate shall only be applicable if you can produce at the time of our audit of your books and records, certificates of insurance certifying coverage and including you as an insured or additional insured with limits equal to or greater than the limits of liability of this Policy AND copies of contracts with each owner, lessor, or lender agreeing to indemnify or otherwise hold you harmless unconditionally from liability in connection with the use of such HIRED "AUTOS".

All other terms, conditions and agreements remain unchanged.

| Company Name | Policy Number |
|---|---|
| **National Indemnity Company of the South** | **74 APS 062192** |
| | Endorsement Effective |
| | **01/05/2016 12:01 AM** |
| Named Insured | Countersigned at |
| **MA ALTERNATIVE TRANSPORT SERVICE, INC.** | by |

(Authorized Representative)

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

M-4048a (01/2007)

01/20/2016 09:04 261AF4E8-15DC-4821-B8CE-BAF5380D2079

M-3795 (3/87)

**PUNITIVE DAMAGE EXCLUSION**
**DUTY TO DEFEND AMENDMENT**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies the insurance provided under all coverage forms and is effective on the inception date of the policy or on the date shown below.

The insuring agreement is amended to provide that this insurance does not apply to any sums awarded as punitive damages.

The Company has the right and duty to defend any suit asking for damages covered by this policy. However, the Company has no duty to defend suits for bodily injury or property damage not covered by this policy. The Company has the right to defend any suit against the insured which seeks both punitive damages and damages covered in the insuring agreement. However, the Company has no duty to defend any suit seeking only punitive damages or where the remaining allegations of a complaint seek only punitive damages, and the Company shall have the right to settle that part or parts of a suit seeking damages other than punitive.

In the event of a conflict of interest between the insured and the Company due to allegations of punitive damage or due to other allegations not covered by the insuring agreement, the Company shall not be obligated to retain separate counsel to represent the interests of the insured with respect to defense of non-covered allegations, but the insured shall have the right to retain separate counsel at the insured's expense to serve as co-counsel. The Company shall not be required to relinquish control of the defense to such co-counsel so long as covered allegations remain in the suit.

All other terms, conditions and agreements of the policy shall remain unchanged.

| Company Name | Policy Number |
|---|---|
| **National Indemnity Company of the South** | **74 APS 062192** |
| | Endorsement Effective |
| | **01/05/2016 12:01 AM** |
| Named Insured | Countersigned by |
| **MA ALTERNATIVE TRANSPORT SERVICE, INC.** | |

(Authorized Representative)

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

# ABUSE OR MOLESTATION EXCLUSION

PLEASE READ THIS ENDORSEMENT CAREFULLY

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

The following exclusion is added to the policy:

This insurance does not apply to bodily injury or property damage arising out of:

(a) the alleged, actual or threatened abuse, molestation or sexual contact, whether or not intentional, by anyone of any person; or

(b) the negligent:

(i)   employment;

(ii)  investigation;

(iii) supervision; or

(iv)  retention;

of anyone or negligent entrustment to anyone whose conduct would be excluded by (a) above; or

(c) the reporting to authorities or failure to report to authorities the alleged, actual or threatened abuse, molestation or sexual contact by anyone of any person.

All other terms, conditions and agreements shall remain unchanged.

| Company Name<br>**National Indemnity Company of the South** | Policy Number<br>**74 APS 062192** |
|---|---|
| | Endorsement Effective<br>**01/05/2016 12:01 AM** |
| Named Insured<br>**MA ALTERNATIVE TRANSPORT SERVICE, INC.** | Countersigned at |
| | by |

(Authorized Representative)

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

M-4803 (2/98)                                              01/20/2016 09:04 261AF4E8-15DC-4821-B8CE-BAF5380D2079

# FISCHERREDAVID
## T R I A L   L A W Y E R S

**John P. Fischer, Esq.**
Founding Partner
*Licensed in Florida
*Licensed in U.S. Virgin Islands

**Jordan Redavid, Esq.**
Founding Partner
*Licensed in Florida

August 30, 2018

*Sent via Email (Reports@NationalIndemnity.com; Claims@NationalIndemnity.com)*

National Indemnity Company of the South
PO Box 31361, Omaha, NE 68131
Attn: Claims Department

RE:   **Final Judgment - $5,000,000 USD**
**My Client:**    Sherry Henry
**Insured:**    MA Alternative Transport Service, Inc.
**Policy#:**    74 APS062192 | Claim #:    74 09 422679

To Whom It May Concern:

Earlier this week, a final judgment against your insured was entered and recorded in Orange County, Florida in the amount of $5,000,000 USD related to this claim. A copy is attached to this letter.

I tried contacting Richard Dunn via telephone yesterday, and even left a voicemail, but he has not returned my call. That is regrettably consistent with his only communication with me and my law firm about this claim, which was in a two-page letter dated June 12, 2017. We never heard from him or your company ever again.

I expect to receive a check in the amount of $1,000,000 USD, the policy limits, made payable to "Trust Account of Fischer Redavid PLLC" and received at our main office located at 4601 Sheridan Street, Suite 320, Hollywood, FL 33021 within 10 calendar days. I have attached our W9 for your convenience. A separate letter is being sent to your insured notifying them of the judgment and our intention to promptly pursue collection against them for the excess $4,000,000 USD plus statutory interest of 5.97% per annum, which equates to roughly $817.80 USD per day or $298,500.00 USD per year. We will further let your insured know that we are willing to accept an assignment of their bad-faith interests against your company to forgo collection proceedings at this time.

The reality is that you completely failed in your obligations and duties to defend and attempt to settle this claim within policy limits. If you recall, the initial demand by my client was for $650,000.00 USD, nearly 1/10 of the judgment ultimately obtained in this case. We received no telephone calls, letters, emails, or any other form of communication beyond Mr. Dunn's June 12, 2017 letter, which left our client with no choice other than to commence litigation, which she did. We have reason to believe that your insured promptly notified you after they were served, and still, nobody ever appeared to defend this action.

Thank you for your cooperation with this matter.

JORDAN REDAVID, ESQ.

**EXHIBIT**
**F**

Hollywood Office
4601 Sheridan Street, Ste. 320, Hollywood, FL 33021
Phone: (954) 860-8434 | Fax: (954) 860-8584

Gainesville Office
4735 NW 53 Avenue, Ste. A, Gainesville, FL 32653
Phone: (352) 225-5584 | Fax: (305) 503-9686

SHERRY HENRY, an individual,

    Plaintiff,

v.

MA ALTERNATIVE TRANSPORT
SERVICES, INC., a Florida Corporation,

    Defendant

_____/

IN THE CIRCUIT COURT OF THE 9th
JUDICIAL CIRCUIT IN AND FOR
ORANGE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.  17-010144 CA 01

## FINAL JUDGMENT

Pursuant to the Verdict rendered in this action on August 23, 2018,

    **IT IS ORDERED AND ADJUDGED** that:

    1.    Plaintiff, SHERRY HENRY, who resides at 3149 Split Willow Drive, Orlando, Florida 32808, shall recover from the Defendant, MA ALTERNATIVE TRANSPORT SERVICES, INC., whose principal place of business is 4763 S. Conway Road, Suite D, Orlando, FL 32812, the sum of **FIVE MILLION DOLLARS ($5,000,000.00)**, for which sum let execution issue that said Judgment shall bear interest at a rate of five and ninety-seven hundredths percent (5.97%) per year from the date of the entry of this Judgment, and;

    2.    Plaintiff, SHERRY HENRY, who resides at 3149 Split Willow Drive, Orlando, Florida 32808, shall recover from the Defendant, MA ALTERNATIVE TRANSPORT SERVICES, INC., whose principal place of business is 4763 S. Conway Road, Suite D, Orlando, FL 32812, for damages based upon the trial in this case.  The Judgment may be satisfied by issuing a check made payable to FISCHER REDAVID, PLLC, for the full amount.

    DONE AND ORDERED in Chambers at Orange County, Florida on this 29th day of _____, 2018.

Copies furnished to:
All Counsel of Record

HON. KEVIN B. WEISS
Orange County Circuit Court Judge

State of Florida, County of Orange
I hereby certify that the foregoing is a true and correct copy of the instrument filed in this office.
Confidential or sealed items, if any, have been removed per Fla.R.Jud.Admin. 2.420.
Witness my hand and official seal this ___ day of _____, 20___
Tiffany Moore Russell, Clerk of the Circuit Court
By: _____ Deputy Clerk

**Form W-9**
(Rev. November 2017)
Department of the Treasury
Internal Revenue Service

## Request for Taxpayer
## Identification Number and Certification

▶ Go to *www.irs.gov/FormW9* for instructions and the latest information.

**Give Form to the requester. Do not send to the IRS.**

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

**2** Business name/disregarded entity name, if different from above

FISCHER REDAVID PLLC

**3** Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only one of the following seven boxes.

☐ Individual/sole proprietor or single-member LLC   ☐ C Corporation   ☐ S Corporation   ☒ Partnership   ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=Partnership) ▶ _____

Note: Check the appropriate box in the line above for the tax classification of the single-member owner. Do not check LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is another LLC that is not disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that is disregarded from the owner should check the appropriate box for the tax classification of its owner.

☐ Other (see instructions) ▶ _____

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.) See instructions.

55 SE 6TH STREET, SUITE 205

**6** City, state, and ZIP code

MIAMI, FL 33131

Requester's name and address (optional)

**7** List account number(s) here (optional)

Print or type.
See Specific Instructions on page 3.

## Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN*, later.

Note: If the account is in more than one name, see the instructions for line 1. Also see *What Name and Number To Give the Requester* for guidelines on whose number to enter.

**Social security number**

☐☐☐ – ☐☐ – ☐☐☐☐

or

**Employer identification number**

8 2 – 1 0 6 0 9 7 0

## Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

**Sign Here**   Signature of U.S. person ▶ _(signature)_   Date ▶ 8-30-2018

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/FormW9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following.

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See What is backup withholding, later.*

Cat. No. 10231X

Form **W-9** (Rev. 11-2017)



**National Indemnity**
group of insurance companies

National Indemnity Company • National Fire & Marine Insurance Company • National Liability & Fire Insurance Company
Columbia Insurance Company • National Indemnity Company of Mid-America • National Indemnity Company of the South

September 6, 2018

**VIA PROOF OF MAILING**

MA ALTERNATIVE TRANSPORT
1616 S. Chickasaw Trail
Orlando, FL 32825

RE:      Claim Number:      00422679
         Policy Number:     74APS062192
         Insured:           MA ALTERNATIVE TRANSPORT
         Claimant:          SHERRY HENRY
         Date of Loss:      10/14/2016

Dear Policyholder:

National Indemnity Company of the South (the "Company") previously received notice of an accident that occurred on or about October 14, 2016. Ms. Sherry Henry claims that on or about that date she was riding in your vehicle when it rear-ended another vehicle. Ms. Henry claimed that she sustained personal injuries as a result of that collision. After receiving notice of this alleged accident in June of 2017, the Company conducted an investigation. During that investigation, the Company's independent adjuster met you to discuss this matter. During that discussion, you stated that no such accident had occurred and showed the independent adjuster the purported vehicle involved in the collision. That vehicle exhibited no damage indicating a collision had taken place. You also stated that Ms. Henry was actually upset because your driver refused to take her to the grocery store while being transported.

After receiving a demand for payment from her attorney, the Company responded that additional information was needed to fully evaluate her claim. After several months and no response was received, our file was closed.

The Company recently received communication from Ms. Henry's attorney stating that suit had been filed in Orange County, Florida in late 2017 against MA Alternative Transport, Inc. Additionally, the attorney provided documentation to the Company showing that recently a jury awarded her $5,000,000 against MA Alternative Transport, Inc. Copies of the Complaint and Judgment are enclosed for your review. At no time was the Company informed by you or the plaintiff's attorney that a suit had been filed.

The Company has determined it will retain an attorney for you to litigate this matter and attempt to get the $5,000,000 verdict set aside. The Company is doing so under a full and complete reservation of rights. We have assigned the defense of this case to Bruce Trybus of Cooney, Trybus, Kwavnick & Peets, 1600 W. Commercial Blvd., Suite 200, Ft. Lauderdale, FL 33309, (954) 568-6028. Please cooperate with Mr. Trybus in this matter.

Claim Operations • P. O. Box 31361 • Omaha, Nebraska 68131-0361 • Telephone: (402) 916-3800 • Facsimile: (402) 916-3
E-mail: reports@nationalindemnity.com

*Members of the Berkshire Hathaway group of insurance companies*

EXHIBIT
G



**National Indemnity**
group of insurance companies

September 6, 2018                                        Page 2

The Company issued Business Auto Policy number 74 APS 062192, with an effective policy period of January 5, 2016 to January 5, 2017 (hereinafter the "Policy"). The Policy contains liability limits of insurance of $1,000,000. The purpose of this correspondence is to inform you the Policy may not apply to this loss. The Policy states in pertinent part:

### BUSINESS AUTO COVERAGE FORM

Subject to the limits of insurance set forth in the Declarations and to the Policy's terms, conditions and exclusions, the Policy provides the following under Commercial Auto, form CA 00 01 03 06, Section II – Liability Coverage:

#### SECTION II – LIABILITY COVERAGE

#### A. Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

\*\*\*

In summary, subject to the Policy's limits of insurance and other terms, conditions and exclusions, the Policy only applies to sums the insured legally must pay as damages because of "bodily injury" or "property damage" caused by an "accident and resulting from the ownership, maintenance or use of a covered 'auto'".

### SECTION IV – BUSINESS AUTO CONDITIONS

The Policy also contains the following conditions in Section IV – Business Auto Conditions, 2. Duties In The Event Of Accident, Claim, Suit Or Loss:

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

a. In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

(1) How, when and where the "accident" or "loss" occurred;
(2) The "insured's" name and address; and
(3) To the extent possible, the names and addresses of any injured persons and witnesses.

\*\*\*

a. Additionally, you and any other involved "insured" must:

\*\*\*

(2) Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

\*\*\*

 **National Indemnity**
group of insurance companies

September 6, 2018                              Page 3

Ms. Henry's attorney contends that you were served with the summons and Complaint in 2017. The Company never received copies of the summons and Complaint. While we are still investigating this matter, to the extent you failed to comply with the notice provisions of the Policy or fails or has failed to comply with its other duties under the Policy, the insurance provided by the Policy does not apply.

Please note that the Policy requires you to cooperate with the Company in the investigation or settlement of any claim. Your duty to cooperate includes, but is not limited to, the duty to provide information requested by the Company and to appear at and participate in court or other proceedings, including, but not limited to, depositions, hearings, trial, mediations or settlement conferences. The Company reserves the right to deny application of the Policy to any damages you may become legally obligated to pay if you fail to cooperate with the Company in the investigation or settlement of the claim.

### RESERVATION OF RIGHTS

No act of any company representative while investigating, defending, or otherwise managing the claim is or is intended to be a waiver of any right or term of the Policy.

The Company's comments in this letter regarding specific provisions of the Policy do not constitute a modification or waiver of any Policy provision, and do not waive the Company's right to rely on any term, condition, exclusion or other provision of the Policy or applicable law not specifically addressed or referred to in this letter to deny or limit application of the Policy. By this letter, the Company reserves all of its rights under the Policy and applicable law, including but not limited to its rights to supplement or modify this letter.

This initial determination regarding application of the Policy is based on information the Company has received to date. If the claims or related allegations are expanded or modified in any manner, or if you receive any documents such as demands, pleadings, or amended pleadings, please immediately forward the new information to me so the Company may review the revised allegations to determine whether the insurance provided by the Policy would apply to them.

Please contact us immediately if you disagree with this letter or if you know of any different or additional facts or documents regarding this claim or the Policy that you believe may be important to determining the Policy's application in the claim. The Company will utilize the information you provide to assure our Company fully performs its obligations under the Policy and applicable law.



**National Indemnity**
group of insurance companies

September 6, 2018                          Page 4

Sincerely,

National Indemnity Company of the South

*[signature]*

Richard Dunn
Claim Operations

> *It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits.*

cc:

Bruce Trybus
Cooney, Trybus, Kwavnick & Peets
1600 W. Commercial Blvd., Suite 200
Ft. Lauderdale, FL 33309

Filing # 80351440 E-Filed 11/05/2018 04:18:57 PM

IN THE CIRCUIT COURT OF THE NINTH
JUDICIAL CIRCUIT IN AND FOR
ORANGE COUNTY, FLORIDA

SHERRY HENRY, an individual,

        Plaintiff,

vs.

MA ALTERNATIVE TRANSPORT
SERVICES, a Florida Corporation,

        Defendant.

_____/

CASE NO.: 2017-CA-010144-O
DIVISION: 33

## ORDER DENYING "DEFENDANT, MA ALTERNATIVE TRANSPORT SERVICES, INC.'S MOTION TO SET ASIDE ENTRY OF DEFAULT AND VACATE FINAL JUDGMENT AND TO STRIKE THE RECOVERY AWARDED TO THE PLAINTIFF"

THIS MATTER comes before Court for hearing on "Defendant, MA Alternative Transport Services, Inc.'s Motion to Set Aside Entry of Default and Vacate Final Judgment and to Strike the Recovery Awarded to the Plaintiff," filed on September 10, 2018, and "Plaintiff's Response in Opposition to Defendant's Motion to Set Aside Entry of Default and Vacate Final Judgment and to Strike the Recovery Awarded to the Plaintiff," filed on October 19, 2018. A hearing on Defendant's ("MA Alternative") Motion was held on October 22, 2018. The Court, having reviewed the file and affidavits, heard and considered the arguments of counsel and testimony of Ariel Malagon ("Malagon"), President and Registered Agent of MA Alternative, and witness, Doate Santiago, and being otherwise fully advised in the premises, hereby finds and orders as follows:



EXHIBIT
H

## RELEVANT FACTS AND HISTORY

Plaintiff ("Henry") initiated the present negligence cause of action against MA Alternative on November 18, 2017. MA Alternative is the owner of a vehicle in which Henry was a passenger. An unknown person was driving the vehicle and allegedly caused a rear-end collision during which Henry was injured. Henry thereafter filed a claim against MA Alternative for her injuries.

A Summons was issued for MA Alternative on November 21, 2017. The Summons provided that it should be served, along with Henry's Complaint, to Malagon, as the Registered Agent of MA Alternative, at 1616 S. Chickasaw Trail, Orlando, Florida 32825.

The Verified Return of Service was filed on December 21, 2017. It reflects that the Summons and Complaint were served on one Doate Santiago ("Santiago"), a "co-resident" at the Registered Agent's address, on November 22, 2017.[1]

On December 27, 2017, Henry filed her Motion for Clerk's Default because MA Alternative had failed to file or serve any paper within the time period required by law. Following the Clerk's entry of Default, Henry filed her Motion for Partial Final Judgment. On January 29, 2018, this Court entered an Order stating that Henry was entitled to final judgment as to the facts but that unliquidated damages were yet to be determined. On July 17, 2018, this Court mailed its Notice of Trial to the parties. The record shows that the Notice of Trial sent to MA Alternative was returned as undeliverable and unable to be forwarded.

A jury trial was held on August 23, 2018. The jury returned a verdict in favor of Henry and awarded her $5,000,000 in damages. On August 29, 2018, this Court entered its Final

---

[1] MA Alternative and Malagon refer to the witness as Doate Santiago, which is the name on the Verified Return of Service, however his affidavit reflects that he refers to himself as Santiago Duarte. To avoid confusion, this Order shall refer to him as Santiago.

Judgment, holding that Henry shall recover $5,000,000 from MA Alternative.  On September 10, 2018, MA Alternative filed its Motion to Set Aside Entry of Default and Vacate Final Judgment.

A hearing on the Motion was held on October 22, 2018.  Malagon testified as did his witness, Santiago.  This Order follows:

MA Alternative first asks that the Default and Final Judgment be vacated due to failure of proper service because Santiago was not a resident at the Chickasaw Trail address.

Section 48.081(3)(b), Florida Statues (2016) provides that "[i]f the address provided for the registered agent, officer, director, or principal place of business is a residence, service on the corporation may be made by serving the registered agent, officer, or director in accordance with s. 48.031."  Section 48.301(1)(a), Florida Statutes (2016) provides in pertinent part that service of process can be made "by leaving copies . . . with any person residing therein who is 15 years of age or older and informing the person of their contents."

As noted above, Malagon is the Registered Agent for MA Alternative.  The registered address, 1616 S. Chickasaw Trail, Orlando, Florida, 32825, is also Malagon's residential address. The Verified Return of Service shows that the Summons and Complaint were served on Santiago, a "co-resident."  According to MA Alternative, Santiago was never a resident at the address in question and in support of this claim filed affidavits from both Malagon and Santiago.  In his affidavit, Malagon maintains that Santiago never resided at the Chickasaw Trail address and never gave him the court documents.

In his affidavit, Santiago maintains that he never resided at the Chickasaw Trail address but was there taking care of Malagon's dog when the process server arrived.  He claims that

although he advised the process server that he did not live there, the process server still had him sign for the package. Santiago further claims that he forgot to give the package to Malagon.

Because Henry did not strictly comply with section 48.031(1)(a), Florida Statutes, by delivering the Summons and Complaint to an actual resident of the Chickasaw Trail property, MA Alternative argues it was not properly served and therefore this Court did not have jurisdiction to enter the Default or the Final Judgment.

Even if service is found to be valid, MA Alternative contends that the Default and Final Judgment should be set aside because "Florida public policy favors the setting aside of defaults so that controversies may be decided on the merits." *Elliot v. Aurora Loan Services*, LLC 31 So. 3d 304, 306 (Fla. 4th DCA 2010) (quoting *Jeyanandarajan v. Freedman*, 863. So. 2d 432, 433 (Fla. 2003).

A default judgment may be set aside "upon a showing that excusable neglect led to the default, a meritorious defense exists for the cause, and due diligence was used to set aside the default." *Latin Am. Prop. & Cas. Ins. Co. v. Italian Palace, Inc.*, 596 So. 2d 1174, 1175 (Fla. 4th DCA 1992). Excusable neglect is found where inaction results from clerical or secretarial error, reasonable misunderstanding, a system gone awry, or "any other of the foibles to which human nature is heir." *Somero v. Hendry Gen. Hosp.*, 467 So. 2d 1103 (Fla. 4th DCA 1985).

Here, Malagon states in his affidavit that MA Alternative policy is that any suit documents are to be given to him as he knows to forward such documents to his insurer. However, he maintains that he was never provided any of the documents related to this lawsuit and was therefore never notified of the litigation.

MA Alternative further contends that there are meritorious defenses against Henry's claims and that only six business after receiving notice of the Default and verdict, filed the present Motion. *Elliott v. Aurora Loan Serv., LLC*, 31 So. 3d 304, 307 (Fla. 4th DCA 2010) ("It has been held that six-day, seven-day, and fifteen-day time lapses between the discovery of a default and the filing of a motion to vacate that default showed due diligence.").

In her Response to MA Alternative's claims, Henry contends that MA Alternative cannot meet the high burden needed to invalidate service of process. Henry provides that her counsel, Mr. Jordan Redavid ("Redavid"), contacted Malagon by phone on November 30, 2016, for the purposes of obtaining an explanation as to why MA Alternative had not complied with the October 24, 2016 statutory notice letter and in response, Malagon advised him to contact his insurance company. Redavid's affidavit, attached to the Response, states that he personally called MA Alternative multiple times in an attempt to speak to Malagon and that when he finally made contact, Malagon acknowledged receipt of the statutory notice letter.

Henry further contends that Redavid's office sent, via certified mail, a copy of the Uniform Order Setting Case for Jury Trial to the Chickasaw Trail address on February 8, 2018. The tracking number from the United States Postal Service is attached to the Response and reflects that the mailing was delivered to an individual at the address on February 10, 2018. Also attached, is an affidavit from Redavid's office manager wherein she states that she personally mailed the envelope.

Henry also alleges that after the Order Setting Case for Jury Trial was delivered, Malagon contacted Redavid. She contends that Redavid then advised Malagon of the Default, to which Malagon responded with profanities. This is also reflected in Redavid's affidavit.

While conceding that MA Alterative has met the prongs for meritorious defense and due diligence, Henry maintains that MA Alternative has failed to demonstrate excusable neglect. Specifically, Henry points out that Malagon, through his conversation with Redavid, was made aware of the Default and still failed to take action or defend this matter.

ANALYSIS AND RULING

Taking into account the arguments and evidence presented, as well as the testimony of Malagon and Santiago at the hearing, this Court finds that the substitute service was proper and this Court has jurisdiction over these matters. Furthermore, the Court agrees that MA Alternative has failed to demonstrate or establish excusable neglect.

Because MA Alternative is arguing that service of process was invalid, MA Alternative bears the burden to overcome the presumption of service. *See Melchi Development Group, Inc.* v. *Berky Development Group, LLC*, 918 So. 2d 407 (Fla. 5th DCA 2006). "It has well been established that a process server's return of service on a defendant which is regular on its face is presumed to be valid absent *clear and convincing evidence* presented to the contrary." *Telf Corp. v. Gomez*, 671 So. 2d 818 (Fla. 3d DCA 1996) (emphasis added). A simple denial to impeach the validity of service is not sufficient. *Id.*; *see also Slomowitz. V. Walker*, 429 So. 2d 797, 799 (Fla. 4th DCA 1983) (holding that "clear and convincing evidence must be presented to corroborate the defendant's denial of service," because permitting "a defendant to impeach a summons by simply denying service would create chaos in the judicial system").

The Florida Supreme Court has provided that:

> Clear and convincing evidence is defined as an intermediate burden of proof that requires that the evidence must be found to be credible; the facts to which the witnesses testify must be distinctly remembered; the testimony must be precise and explicit and the witnesses must be lacking in confusion as to the facts in issue. The

evidence must be of such weight *that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established.*

*South Florida Water Management Dist. v. RLI Live Oak*, LLC, 139 So. 3d 869, 872 (Fla. 2014) (internal cites omitted) (emphasis added).

Both Malagon and Santiago testified at the hearing. Malagon testified that Santiago never lived at his residence and never provided him with the Summons and Complaint. He further stated that he never received phone calls or correspondence from Redavid and never initiated any phone calls to him. Malagon also testified that while he did sometimes have employees at his home, none of them would have had access to his mail. When asked about the certified mailing of the Uniform Order Setting Case for Jury Trial, Malagon denied ever receiving it.

When cross-examined, Malagon could not explain how Henry had determined that the insurance agent for MA Alternative was Sardy's Insurance. At first, Malagon again denied ever speaking to Redavid. He then stated that it was two years ago and he could not remember what happened. Upon further questioning, Malagon again denied ever speaking with Redavid.

Santiago testified that he was employed by Malagon, that he never resided at the Chickasaw Trail address, and while he did accept the parcel from the process server, he never passed it on to Malagon.

The Court concludes that MA Alternative has not sustained its high burden of demonstrating the invalidity of service. *Telf Corp. v. Gomez*, 671 So. 2d at 819. While Malagon and Santiago both testified that Santiago did not reside at the property, there was no corroborating documentation or evidence presented that verified Santiago lived elsewhere at the time of service or to otherwise "impeach the validity of the summons." *Id.*

Similar to the case here, the Fourth DCA in *Johnson v. Christiana Trust*, 166 So. 3d 940 (Fla. 4th DCA 2015) upheld the trial court's denial of a motion to quash service due to the fact that the appellant had failed to present any additional evidence to corroborate two affidavits and a verified letter stating that the appellant did not reside at the address in question.[2] The district court based its reasoning on the findings in *Cf. Kemmerer v. Klass Assocs., Inc.,* 108 So. 3d 672, 672-74 (Fla. 2d DCA 2013) and *Carone v. Millennium Settlements, Inc.*, 84 So. 3d 1141, 1142-43 (Fla. 4th DCA 2012). In *Kemmerer*, the court found that the defendant had presented "clear and convincing evidence" that substituted service on her boyfriend was insufficient by submitting two affidavits and attaching copies of her driver's license, property appraiser records, and property tax bill. Likewise, the defendant in *Carone*, was found to have presented "clear and convincing evidence" that the substituted service on her father was improper by submitting her sworn affidavit, a certified copy of the deed to her father's condominium, copies of his driver's license, U.S.P.S. form, and homestead exemption, and testimony from him that he did not reside with the defendant.

Furthermore, this Court finds that Malagon's inconsistent testimony and statements that are in direct contradiction of Redavid's account, fail to inspire "a firm belief or conviction, *without hesitancy*, as to the truth of the allegations . . ." *South Florida Water Management Dist. v. RLI Live Oak, LLC*, 139 So. 3d at 872 (emphasis added). Consequently, the Court finds that substitute service of process on Santiago was valid.

MA Alternative also argues that the Default and Final Judgment should be set aside due to excusable neglect because MA Alternative's policy is that all suit documents should be given to

---

[2] The court found that the trial court had denied the motion for the wrong reasons but affirmed based upon the tipsy coachman doctrine and lack of corroborating evidence.

Malagon and Santiago failed to do so.  However, this does not negate the fact that Redavid attested to two conversations with Malagon concerning the initial claim and the subsequent Default.  In addition, Malagon cannot account for the certified mailing of the Uniform Order Setting Case for Jury Trial that was delivered to an unknown individual at the Chickasaw Trail address, particularly in light of his testimony that employees do not have access to his mail.  *See Bequer v. Nat'l City Bank*, 46 So. 3d 1199, 1202 (Fla. 4th DCA 2010) (finding that "[m]issing the complaint and the correspondence is not evidence of a 'system gone awry' but rather a defective system altogether").  Furthermore, MA Alternative cannot demonstrate excusable neglect when Malagon, as the Registered Agent, had been put on notice regarding, at a minimum, the Default and the pending jury trial and still failed to take action or file a responsive pleading.

Therefore, in accordance with the foregoing, it is hereby **ORDERED AND ADJUDGED** that "Defendant, MA Alternative Transport Services, Inc.'s, Motion to Set Aside Entry of Default and Vacate Final Judgment and to Strike the Recovery Awarded to the Plaintiff," filed on September 10, 2018, is **DENIED**.

**DONE AND ORDERED** in Chambers, at Orange County, Florida on this ⁄ day of _Nov._, 2018.

KEVIN B. WEISS
**CIRCUIT JUDGE**

Page 9 of 10
2017-CA-010144-O

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that the foregoing was filed with the Clerk of the Court this 5th day of Nov, 2018 by using the Florida Courts E-Filing Portal System. Accordingly, a copy of the foregoing is being served on this day to all attorney(s)/interested parties identified on the ePortal Electronic Service List, via transmission of Notices of Electronic Filing generated by the ePortal System.

_____

Jill Gay, Judicial Assistant

# FISCHERREDAVID
## T R I A L   L A W Y E R S

John P. Fischer, Esq.
Founding Partner
*Licensed in Florida
*Licensed in U.S. Virgin Islands

Jordan Redavid, Esq.
Founding Partner
*Licensed in Florida

**CONFIDENTIAL – FOR PURPOSES OF SETTLMENT DISCUSSIONS ONLY**

November 6, 2018

*VIA EMAIL (BTrybus@CTKPLaw.com, APeets@CTKPLaw.com, PGregory@CTKPLaw.com)*
Cooney Trybus Kwavnic Peets
1600 W. Commercial Blvd.
Suite 200
Fort Lauderdale, FL 33309

RE:   **Sherry Henry v. MA Alternative Transport Services, Inc.**
      **Case #:**      **2017-CA-010144-O (Orange County, FL)**
      **Your File #:**   **18-0274**

Mr. Peets,

Yesterday, Judge Weiss entered an order denying your motion to set aside entry of default and vacate final judgment in the above-referenced matter. His order was thorough and correct. Any direct appeal would serve only to waste time, require the full posting of a bond, and prejudice your client who has already had substantial interest accrue and would have hundreds of thousands of dollars more accrue until the DCA issued its PCA. I now consider this matter resolved and am reaching out to finalize it. I see two potential paths:

First, we immediately commence our efforts to collect upon the judgment. To that end, we need dates to depose Ariel Malagon in November and December 2018. We will serve written discovery, too. Please provide me those dates by close of business Friday.

Alternatively, if you would like to discuss an amicable resolution of this matter, please feel free to contact me, in writing, with proposed settlement terms. As it stands, your client is responsible for this judgment in large part because his insurance company acted in bad faith. Should Mr. Malagon wish to assign his rights and interests in, among other things, bad faith against that insurer in exchange for us holding off collection against his company, that is certainly something my client would entertain.

Very truly yours,

JOHN P. FISCHER, ESQ.

**EXHIBIT**
I

Hollywood Office:
4601 Sheridan Street, Ste. 320, Hollywood, FL 33021
Phone: (954) 860-8434 | Fax: (954) 860-8584

Gainesville Office
4735 NW 53 Avenue, Ste. A, Gainesville, FL 32653
Phone: (352) 225-5584 | Fax: (305) 503-9686